# EXHIBIT  1

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-7897-GHK(FMOx) | | Date | JULY 13, 2009 |
|---|---|---|---|---|
| Title | GYRODATA INCORPORATED vs. ATLANTIC INERTIAL SYSTEMS, INC., et al. | | | |

| Presiding: The Honorable | GEORGE H. KING, U. S. DISTRICT JUDGE |
|---|---|

| Beatrice Herrera | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| (NONE) | (NONE) |

**Proceedings:**     **(IN CHAMBERS) ORDER: (1) VACATING SCHEDULING CONFERENCE; AND (2) ENTERING SCHEDULING DATES**

This matter is before us for scheduling conference. Having considered the Report of Parties' Planning Meeting, we determine that an in-person scheduling conference is unnecessary. The Scheduling Conference is hereby vacated and taken off calendar. We now enter the following scheduling order:

1. Any stipulation or motion to amend as to any claims, defenses and/or parties shall be lodged/filed by no later than August 13, 2009, failing which it shall be deemed that party's waiver of any such amendments in this action.

2. All fact discovery shall be COMPLETED by no later than October 16, 2009. Completion means that any discovery that is not received in hand by the requesting party by the completion date will be denied.

3. The parties shall designate their expert witnesses, and make the required disclosures, by no later than November 2, 2009, and do likewise for any rebuttal expert witnesses by no later than December 2, 2009. All expert discovery shall be COMPLETED by no later than January 15, 2010.

4. The parties shall attend an early mediation by no later than August 10, 2009. If this early mediation does not result in resolution of this case, the parties shall attend a follow-up mediation by no later than January 29, 2010. If the case settles, counsel shall notify the court clerk forthwith. If the case does not settle, counsel shall file a joint status report with the court within 48 hours of termination of settlement discussions.

5. Any summary judgment motion shall be filed in compliance with the Local Rules, as well as our Order Re: Summary Judgment Motions issued concurrently herewith, by no later than February 26, 2010, and noticed for hearing thereafter regularly under the Local Rules. Any untimely or non-conforming motion shall be denied.

6. The court will set pre-trial conference and trial dates, if necessary, after resolution of the summary judgment motion.

**IT IS SO ORDERED.**

| | -- | : | -- |
|---|---|---|---|
| Initials of Preparer | | Bea | |

# EXHIBIT  2

THOMAS M. FULKERSON (TX SBN 07513500)
(*Pro Hac Vice* Admission)
Email: tfulkerson@tlotf.com
TAMMY J. TERRY (CA SBN 230283)
Email: tterry@tlotf.com
THE LAW OFFICES OF TOM FULKERSON
700 Louisiana Street, Suite 4700
Houston, Texas 77002-2773
Telephone: (713) 654-5800
Facsimile: (713) 654-5801

CHAD S. HUMMEL (CA SBN 139055)
E-mail: chummel@manatt.com
TRAVIS A. CORDER (CA SBN 237575)
E-mail: tcorder@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
11355 West Olympic Boulevard
Los Angeles, California 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224
ATTORNEYS FOR PLAINTIFF
GYRODATA INCORPORATED

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| GYRODATA INCORPORATED, a Texas corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ATLANTIC INERTIAL SYSTEMS INC., a California and Delaware corporation; BAE SYSTEMS, INC., a Delaware corporation; BAE SYSTEMS CONTROLS, INC., a Delaware corporation; and DOES 1 - 10,<br><br>Defendants. | Case No. CV 08-7897-GHK (FMOx)<br><br>Assigned for All Purposes To:<br>Judge: Hon. George H. King<br>Ctrm: 650<br><br>**[PROPOSED] ORDER GRANTING JOINT STIPULATION TO MODIFY SCHEDULING ORDER AND ENTERING REVISED SCHEDULING DATES**<br><br>Amended Complaint Filed:<br>February 27, 2008 |

1

ORDER (1) GRANTING JOINT STIPULATION TO MODIFY SCHEDULING ORDER; AND
(2) ENTERING AMENDED SCHEDULING ORDER

1  **ORDER (1) GRANTING JOINT STIPULATION TO MODIFY SCHEDULING**

2  **ORDER; AND (2) ENTERING AMENDED SCHEDULING ORDER**

3

4      This matter is before us on a joint stipulation to modify the scheduling

5  order.   The Court, having considered the Joint Stipulation to Modify

6  Scheduling Order, finds that good cause exists and the motion to modify the

7  scheduling order is granted.   We now enter the following amended

8  scheduling order:

9

10     1.   Any stipulation or motion to amend as to any claims, defenses

11 and/or parties hall be lodged/filed by no later than October 13, 2009, failing

12 which it shall be deemed that party's waiver of any such amendments in this

13 action.

14

15     2.   All fact discovery shall be COMPLETED by no later than

16 December 15, 2009.   Completion means that any discovery that is not

17 received in hand by the requesting party by the completion date will be

18 denied.

19

20     3.   The parties shall designate their expert witnesses, and make the

21 required disclosures, by no later than January 4, 2010, and do likewise for

22 any rebuttal expert witnesses by no later than February 2, 2010.  All expert

23 discovery shall be COMPLETED by no later than March 15, 2010.

24

25     4.   The parties shall attend an early mediation by no later than

26 October 9, 2009.  If this early mediation does not result in resolution of this

27 case, the parties shall attend a follow-up mediation by no later than

28

2

1   March 29, 2010.   If the case settles, counsel shall notify the court clerk

2   forthwith.  If the case does not settle, counsel shall file a joint status report

3   with the court within 48 hours of termination of settlement discussions.

4

5        5.    Any summary judgment motion shall be filed in compliance with

6   the Local Rules, as well as our Order Re: Summary Judgment Motions

7   issued concurrently herewith, by no later than April 26, 2010, and noticed

8   for hearing thereafter regularly under the Local Rules.  Any untimely or non-

9   conforming motion shall be denied.

10

11        6.    The court will set pre-trial conference and trial dates, if

12   necessary, after resolution of the summary judgment motion.

13

14   **IT IS SO ORDERED.**

15

16   DATED:   8/7/09

17                          THE HONORABLE GEORGE H. KING
                                UNITED STATES DISTRICT COURT JUDGE

18

19   GYR60.0019 65274

20

21

22

23

24

25

26

27

28

# EXHIBIT 3

*E-FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7897-GHK (FMOx) | Date | February 8, 2010 |
|---|---|---|---|
| Title | *Gyrodata Incorporated v. Atlantic Inertial Systems, Inc., et al.* | | |

**Presiding: The Honorable**   **GEORGE H. KING, U.S. DISTRICT JUDGE**

| Beatrice Herrera | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     **(In Chambers) Order re:** Plaintiff's Motion to Modify Scheduling Order

On January 11, 2010, Plaintiff Gyrodata Incorporated ("Gyrodata") filed a Motion to Modify the Scheduling Order in this case. Namely, Gyrodata seeks to reopen discovery for the limited purpose of moving to compel responses to written discovery requests that were submitted before the discovery completion date on December 15, 2009, as set forth in the Revised Scheduling Order. (*See* Dkt. No. 80). In their Opposition papers, Defendants BAE Systems, Inc., BAE Systems Controls, Inc., BAE Systems Information and Electronic Systems Integration, Inc., and Atlantic Inertial Systems, Inc. (collectively, "Defendants") have requested that, should the Court modify the scheduling order to permit Gyrodata to pursue responsive discovery, Defendants similarly be granted leave to file motions to compel.

We hereby **EXTEND** the discovery completion date in this case to **May 10, 2010** for the limited purpose of allowing all Parties to move to compel discovery timely propounded before the prior completion date. The Parties **SHALL NOT** attempt to propound new discovery. We grant this extension with the expectation that all Parties will have more than ample time to resolve any outstanding discovery disputes. The Parties **SHALL** contact Magistrate Judge Olguin's Deputy Clerk to schedule a discovery conference at the earliest possible date to discuss the preparation and timing for any motions to compel. In light of our modification of the discovery completion date, the Court continues all pending dates in the Revised Scheduling Order as follows: The Parties **SHALL** attend a follow-up mediation by no later than **June 24, 2010.** Any dispositive motions **SHALL** be filed, in full compliance with the Local Rules as well as our Order re: Summary Judgment Motions, by no later than **July 26, 2010.**

   **IT IS SO ORDERED.**

|  | --- : --- |
|---|---|
| Initials of Deputy Clerk | ljw for Bea |

cc: Magistrate Judge Olguin

# EXHIBIT  4

1   CYRIL J. DANTCHEV (SBN 129585)
    Email: cyril.dantchev@bipc.com
2   BUCHANAN INGERSOLL & ROONEY LLP
    600 West Broadway, Suite 1100
3   San Diego, CA 92101
    Telephone: 619 239 8700
4   Facsimile: 619 702 3898

5   MARY SUE HENIFIN (*Admitted Pro Hac Vice*)
    Email: mary.henifin@bipc.com
6   SANDRA S. MORAN (*Admitted Pro Hac Vice*)
    Email: sandra.moran@bipc.com
7   BUCHANAN INGERSOLL & ROONEY PC
    700 Alexander Park, Suite 300
8   Princeton, NJ 08540

9   Attorneys for Defendants
    BAE SYSTEMS, INC. and BAE SYSTEMS CONTROLS INC.
10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                  LOS ANGELES DIVISION

14   GYRODATA INCORPORATED, a          Case No. CV08-7897 GHK (FMOx)
     Texas corporation,
15                                     FIRST AMENDED NOTICE OF
                          Plaintiff,   CONTINUED DEPOSITION OF
16                                     PLAINTIFF GYRODATA'S
            vs.                        CUSTODIAN OF RECORDS WITH
17                                     REQUEST TO PRODUCE
     ATLANTIC INERTIAL SYSTEMS         DOCUMENTS
18   INC., a California and Delaware
     corporation; BAE SYSTEMS, INC., a Judge:         Hon. George H. King
19   Delaware corporation; CAROL       Courtroom:     650
     MARINELLO, an individual; and     Complaint Filed: December 1, 2008
20   DOES 1 - 10,
                                       Date:          September 1, 2009
21                        Defendants.  Time:          10:00 a.m.
                                       Location: Oaks Hartline & Daly
22                                               2323 S. Shepherd, 14th Floor
                                                 Houston, TX 77019
23

24

25

26

27

28

FIRST AMENDED NOTICE OF CONTINUED DEPOSITION OF GYRODATA'S CUSTODIAN OF RECORDS
                                                      CV08-7897 GHK (FMOX)

1   **PLEASE TAKE NOTICE** that the deposition of Plaintiff **GYRODATA**

2   **INCORPORATED** ("GYRODATA" or "Plaintiff) Custodian of Records, pursuant

3   to Rule 30 of the Federal Rules of Civil Procedure, by Defendants BAE SYSTEMS,

4   INC. and BAE SYSTEMS CONTROLS INC., ("BAE" or "Defendant"), previously

5   noticed for July 7, 2009, and continued by agreement of the parties, will be conducted

6   on **September 1, 2009, at 10:00 a.m.** before a Certified Shorthand Reporter.  The

7   deposition will take place at the law offices of **Oaks, Hartline & Daly, 2323 S.**

8   **Shepherd, 14th Floor, Houston, Texas, 77019.**  Said deposition will also be

9   recorded by videotape, and will continue day-to-day, excluding weekends and

10  holidays, until completed as may be permitted by Rule 30 of the Federal Rules of

11  Civil Procedure.

12      The following terms shall have the following meaning throughout this Notice

13  of Deposition and Request to Produce Documents:

14                          **DEFINITIONS**

15      1.    As used herein, "YOU" and "YOUR," shall mean GYRODATA

16  INCORPORATED ("GYRODATA" or "PLAINTIFF") and shall include but not be

17  limited to its current and prior directors, managers, officers, employees, partners,

18  agents, representatives, predecessors, successors, parents, subsidiaries, divisions or

19  affiliates, or any person acting on behalf of any of the aforementioned.

20      2.    As used herein, "COMMUNICATION" shall mean any and all written,

21  oral, telephonic or other utterances of any nature whatsoever, shared, shown and/or

22  transferred between and/or among any two or more persons or entities, including, but

23  not limited to, any statements, inquiries, discussions, conversations, dialogues,

24  correspondence, consultations, negotiations, agreements, understandings, meetings,

25  letters, notations, telegrams, advertisements, interviews, and all other DOCUMENTS.

26      3.    As used herein, "DOCUMENT(S)" means and includes any kind of

27  printed, recorded, written, graphic, photographic or sound recorded matter, however

28  printed, produced, reproduced, coded or stored, of any, kind or description, whether

- 1 -

1  sent or received or not, including originals, copies, reproductions, facsimiles, drafts,

2  both sides of any such item, and including without limitation all "writings",

3  "recordings", and "photographs" as defined by Federal Rule of Evidence 1001, and

4  every other means of recording upon any tangible thing of any form of a

5  communication or representation, including letters, emails, words, pictures, sounds,

6  or symbols, or combinations thereof, and further including without limitation all

7  objects or tangible things such as computer tapes or diskettes, magnetic tapes, punch

8  cards, computer printouts, microfilms, and all other records kept by electronic,

9  photographic or mechanical means, and any things similar to the foregoing, by

10  electronic, photographic or mechanical means, and any things similar to the

11  foregoing, however denominated by YOU. If a DOCUMENT has been prepared in

12  more than one copy, and any copy was not identical or is no longer identical with the

13  original by reason of a subsequent notation or other modification of any kind

14  whatever, including without limitation, notes or modifications on the margins or

15  backs of pages thereof, each non-identical copy is a separate DOCUMENT.

16      4.    As used herein, the words "REFER", "RELATE", "CONCERN", and

17  "CONCERNING", and the phrases "REFERRING TO", "RELATING TO", "REFER

18  TO", "RELATE TO", or "RELATED TO", mean referring to, pertaining to, relating

19  to, alluding to, bearing upon, commenting upon, touching upon, regarding,

20  concerning, recording, evidencing, constituting, substantiating, discussing,

21  mentioning, or otherwise affecting (directly or indirectly).

22      5.    As used herein, the words "DEFENDANT" or "AIS" mean Defendant

23  ATLANTIC INERTIAL SYSTEMS, INC., and shall include but not be limited to its

24  current and prior directors, managers, officers, employees, partners, agents,

25  representatives, predecessors, successors, parents, subsidiaries, divisions or affiliates,

26  or any person acting on behalf of any of the aforementioned.

27

28

6.     As used herein, the word "BAE RELATED ENTITY(IES)" refers to BAE SYSTEMS, BAE SYSTEMS INERTIAL PRODUCTS, INC and BAE SYSTEMS ELECTRONICS & INTEGRATED SOLUTIONS.

7.     As used herein, the word "BAE SYSTEMS DEFENDANTS" means Defendants BAE SYSTEMS, INC. and BAE SYSTEMS CONTROLS INC. and shall include but not be limited to its current and prior directors, managers, officers, employees, partners, agents, representatives, predecessors, successors, parents, subsidiaries, divisions or affiliates, or any person acting on behalf of any of the aforementioned.

8.     As used herein, the word "PERSON" or "PERSONS" mean and include any natural person, individual, firm, association, corporation, partnership, joint venture, proprietorship, or other legal entity and all representatives of such PERSON(S).

9.     As used herein, the word "COMPLAINT" refers to Plaintiff's unverified First Amended Complaint in this action, filed in United States District Court, Central District on March 20, 2009.

10.     As used herein, the word "DEFENDANTS" shall include both AIS and the BAE SYSTEMS DEFENDANTS.

Pursuant to Fed. R. Civ. P. 30(b)(6), the following is a list of the matters upon which the Custodian of Records for Plaintiff GYRODATA will be deposed:

## CATEGORIES OF TESTIMONY[1]

1.     All contracts between Condor Pacific, (as defined by YOU in the COMPLAINT at Paragraph 14) and PLAINTIFF RELATED TO the design, manufacture or repair of dynamically tuned gyroscopes.

---

[1] The Categories of Testimony and Request for Production are the same as those served by AIS except for the following numbers herein, which relate to specific allegations against the BAE SYSTEMS DEFENDANTS: 25, 27-30, 33-40, 55-85, and 120-126.

- 3 -

1      2.     All DOCUMENTS supporting PLAINTIFF'S claim that DEFENDANTS

2 failed to fill T-100 gyroscope purchase orders, as alleged in YOUR COMPLAINT.

3      3.     All DOCUMENTS supporting PLAINTIFF'S claim that it lost orders as

4 a result of DEFENDANTS' failure to produce T-100 gyroscope purchase orders.

5      4.     All DOCUMENTS generated by YOU, any BAE RELATED ENTITY,

6 AIS or any other PERSON RELATED TO Purchase Order 201520, dated May 18,

7 2004.

8      5.     All DOCUMENTS generated by YOU, any BAE RELATED ENTITY,

9 AIS or any other PERSON RELATED TO Purchase Order 61010, dated February 16,

10 2005.

11      6.     All DOCUMENTS generated by YOU, any BAE RELATED ENTITY,

12 AIS or any other PERSON RELATED TO Purchase Order 61121, dated August 12,

13 2005.

14      7.     All DOCUMENTS generated by YOU, any BAE RELATED ENTITY,

15 AIS or any other PERSON RELATED TO Purchase Order 61420, dated June 27,

16 2006.

17      8.     All DOCUMENTS generated by YOU, any BAE RELATED ENTITY,

18 AIS or any other PERSON RELATED TO Purchase Order 61706, dated January 26,

19 2007,

20      9.     All DOCUMENTS generated by YOU, any BAE RELATED ENTITY,

21 AIS or any other PERSON RELATED TO Purchase Order 61993, dated October 5,

22 2007.

23      10.    All DOCUMENTS generated by YOU, any BAE RELATED ENTITY,

24 AIS or any other PERSON RELATING TO any unfilled order for Purchase Order

25 201520.

26      11.    All DOCUMENTS generated by YOU, any BAE RELATED ENTITY,

27 AIS or any other PERSON RELATING TO any unfilled order for Purchase Order

28 61010.

- 4 -

12.  All DOCUMENTS generated by YOU, any BAE RELATED ENTITY, AIS or any other PERSON RELATING TO any unfilled order for Purchase Order 61121.

13.  All DOCUMENTS generated by YOU, any BAE RELATED ENTITY, AIS or any other PERSON RELATING TO any unfilled order for Purchase Order 61420,

14.  All DOCUMENTS generated by YOU, any BAE RELATED ENTITY, AIS or any other PERSON RELATING TO any unfilled order for Purchase Order 61706.

15.  All DOCUMENTS generated by YOU, any BAE RELATED ENTITY, AIS or any other PERSON RELATING TO any unfilled order for Purchase Order 61993.

16.  All written contracts, including changes thereto, between any BAE RELATED ENTITY and/or AIS and GYRODATA RELATED TO the T-100.

17.  All written contracts, including changes thereto, between any BAE RELATED ENTITY and/or AIS and GYRODATA RELATED TO the T-70.

18.  All DOCUMENTS which support YOUR allegation in Paragraph 19 of the COMPLAINT that under the terms and conditions of the T-70 Contract, BAE SYSTEMS promised to provide GYRODATA with gyroscopes that BAE SYSTEMS would manufacture according to specifications agreed upon by the parties and incorporated into the T-70 Contract.

19.  All DOCUMENTS which support YOUR allegation in Paragraph 19 of the COMPLAINT that GYRODATA understood that BAE Systems' work on the T-70 Contract was to be performed by employees of BAE SYSTEMS' subsidiary, BAE INERTIAL.

20.  All DOCUMENTS which support YOUR allegation in Paragraph 20 of the COMPLAINT that the T-70 Contract stipulated that BAE Systems was to provide, and GYRODATA agreed to purchase, an additional one thousand (1,000)

- 5 -

1 | gyroscopes, priced between nine thousand dollars ($9,000) and nine thousand five
2 | hundred dollars ($9,500) each.

3 |     21. All DOCUMENTS which support YOUR allegation in Paragraph 20 of
4 | the COMPLAINT that BAE SYSTEMS agreed that it would sell the T-70 gyroscopes
5 | under "most favored nations" like pricing provisions, under which GYRODATA
6 | would benefit from any economies of scale encountered in production of the T-70.

7 |     22. All DOCUMENTS which support YOUR allegation in Paragraph 21 of
8 | the COMPLAINT that the parties agreed to extend the delivery date of the T-70
9 | gyroscopes from the originally planned date of May 2004 to at least the fall of 2005.

10 |     23. All DOCUMENTS which support YOUR allegation in Paragraph 22 of
11 | the COMPLAINT that a BAE RELATED ENTITY required the departing (Westlake
12 | Village) employees to sign non-compete contracts that would preclude them from
13 | continuing work on the T-70 project.

14 |     24. All DOCUMENTS which support YOUR allegation in Paragraph 22 of
15 | the COMPLAINT that DEFENDANTS, planned from the time BAE SYSTEMS
16 | acquired Condor Pacific to close the Westlake facility and move Condor Pacific's
17 | manufacturing to Cheshire, Connecticut.

18 |     25. All DOCUMENTS which support YOUR allegation in Paragraph 22 of
19 | the COMPLAINT that the BAE Defendants or BAE Inertial knew of these impending
20 | changes many months if not years before advising GYRODATA and inducing
21 | GYRODATA to continue to order the T-100 gyroscopes from BAE Inertial and may
22 | even have known of them before BAE Systems entered into the T-70 Contract.

23 |     26. All DOCUMENTS which support YOUR allegation in Paragraph 22 of
24 | the COMPLAINT that Greg White planned from the time BAE Systems acquired
25 | Condor Pacific to close the Westlake facility and move Condor Pacific's
26 | manufacturing to Cheshire, Connecticut.

27 |     27. All DOCUMENTS which support YOUR allegation in Paragraph 23 of
28 | the COMPLAINT that the BAE Defendants and/or BAE Inertial gave specific and

-6-

1    repeated assurances that production of the T-100 gyroscope would not be delayed or

2    impaired by the move to Cheshire, Connecticut, and that the facilities there were

3    appropriate and suited for production.

4         28.   All DOCUMENTS which support YOUR allegation in Paragraph 23 of

5    the COMPLAINT that the BAE Defendants and/or BAE Inertial gave specific and

6    repeated assurances that the Westlake Village facility would not be closed until the

7    production of T-100 units was online and functioning effectively in Connecticut.

8         29.   All DOCUMENTS which support YOUR allegation in Paragraph 23 of

9    the COMPLAINT that the BAE Defendants and/or BAE Inertial gave specific and

10   repeated assurances that although the bulk of the Westlake Village production facility

11   would be closed, a portion of it would remain open as a "research facility" and that

12   projects similar to and including the development of the T-70 gyroscope would

13   continue there.

14        30.   All DOCUMENTS which support YOUR allegation in Paragraph 24 of

15   the COMPLAINT that when BAE Systems (directly or through one of the BAE

16   RELATED ENTITIES) closed the Westlake Village facility, the Cheshire facility

17   was nowhere near full timely production and that deliveries of the T-100 lagged, with

18   many not being shipped at all.

19        31.   All DOCUMENTS which support YOUR allegation in Paragraph 24 of

20   the COMPLAINT that BAE Systems (directly or through one of the BAE RELATED

21   ENTITIES) required the former employees to enter into covenants not to compete as

22   conditions of their severance.

23        32.   All DOCUMENTS which support YOUR allegation in Paragraph 25 of

24   the COMPLAINT that after closing the Westlake Village facility, BAE Systems

25   abandoned the T-70 Contract.

26        33.   All DOCUMENTS which support YOUR allegation in Paragraph 26 of

27   the COMPLAINT that GYRODATA made several attempts to allow BAE Inertial to

28

- 7 -

1   cure the failure resulting from closing Westlake Village facility and requested
2   permission from BAE Inertial to repair and/or manufacture T-100s itself.

3       34.   All DOCUMENTS which support YOUR allegation in Paragraph 26 of
4   the COMPLAINT that BAE Inertial refused to allow GYRODATA to repair and/or
5   manufacture T-100.

6       35.   All DOCUMENTS which support YOUR allegation in Paragraph 26 of
7   the COMPLAINT that BAE Inertial told GYRODATA that while it was not
8   "economical" for BAE Inertial to repair the T-100s, BAE Inertial would nonetheless
9   like to submit a quotation to GYRODATA for the repair work.

10      36.   All DOCUMENTS which support YOUR allegation in Paragraph 26 of
11  the COMPLAINT that BAE Inertial told GYRODATA that if BAE Inertial was
12  "unable " or "elected not to" repair the T-100s, GYRODATA would have to obtain a
13  license from BAE Inertial to repair the T-100s itself.

14      37.   All DOCUMENTS which support YOUR allegation in Paragraph 26 of
15  the COMPLAINT that BAE Inertial told GYRODATA that GYRODATA would
16  have to obtain a license from BAE Inertial to manufacture the T-100s itself.

17      38.   All DOCUMENTS which support YOUR allegation in Paragraph 27 of
18  the COMPLAINT that BAE Inertial was the only company that manufactured the T-
19  100 and/or T-70 to necessary specifications.

20      39.   All DOCUMENTS which support YOUR allegation in Paragraph 28 of
21  the COMPLAINT that throughout the fall of 2006 and spring of 2007, BAE Inertial
22  gave GYRODATA just enough explanation to keep GYRODATA waiting on "empty
23  promises".

24      40.   All DOCUMENTS which support YOUR allegation in Paragraph 29 of
25  the COMPLAINT that GYRODATA has given BAE Systems and AIS numerous
26  opportunities to fulfill their obligations under the T-70 and T-100 contracts.

27      41.   All DOCUMENTS which support YOUR allegation in Paragraph 29 of
28  the COMPLAINT that as of today, AIS remains in severe default on the production

- 8 -

1 of T-100 gyroscopes and BAE Systems and AIS remain in default of the development

2 of the T-70 gyroscope.

3      42.   All DOCUMENTS which support YOUR allegation in Paragraph 30 of

4 the COMPLAINT that AIS has not fulfilled the T-100 contracts, and it has become

5 clear that BAE Systems and AIS have no intention of fulfilling the T-70 Contract.

6      43.   All DOCUMENTS which support YOUR allegation in Paragraph 32 of

7 the COMPLAINT that GYRODATA had the ability to perform and has performed all

8 conditions, covenants, and promises required to be performed by it under the terms

9 and conditions of the T-70 Contract.

10      44.   All DOCUMENTS which support YOUR allegation in Paragraph 33 of

11 the COMPLAINT that BAE SYSTEMS anticipatorily repudiated the T-70 Contract

12 by terminating the BAE California Team, which had responsibility for BAE

13 SYSTEMS' performance under that contract.

14      45.   All DOCUMENTS which support YOUR allegation in Paragraph 33 of

15 the COMPLAINT that by terminating the BAE California Team, BAE SYSTEMS

16 precluded itself (and its apparent successor to its obligations under the T-70 Contract,

17 AIS) from performing its obligations.

18      46.   All DOCUMENTS which support YOUR allegation in Paragraph 33 of

19 the COMPLAINT that despite demand, AIS and BAE SYSTEMS have made no

20 adequate assurance of future performance and are making no effort whatsoever to

21 perform the T-70 Contract.

22      47.   All DOCUMENTS which support YOUR allegation in Paragraph 35 of

23 the COMPLAINT that AIS and BAE SYSTEMS' breach of the T-70 Contract has

24 caused GYRODATA damages in an amount that exceeds the minimum jurisdictional

25 limit of this Court, including without limitation General losses, including the money

26 GYRODATA already has paid to BAE Systems and AIS under the T-70 Contract.

27      48.   All DOCUMENTS which support YOUR allegation in Paragraph 35 of

28 the COMPLAINT that AIS and BAE SYSTEMS' breach of the T-70 Contract has

- 9 -

1    caused GYRODATA damages in an amount that exceeds the minimum jurisdictional

2    limit of this Court, including without limitation general losses, including the

3    difference between the price at which AIS and BAE Systems agreed to produce T-70

4    gyroscopes ($9,000 to $9,500 per gyroscope) and the cost of procuring these from

5    another supplier (estimated at $20,000 to $25,000 per gyroscope), for each gyroscope

6    AIS and BAE Systems was obligated to produce, but did not produce, under the

7    contract.

8        49.    All DOCUMENTS which support YOUR allegation in Paragraph 35 of

9    the COMPLAINT that AIS and BAE SYSTEMS' breach of the T-70 Contract has

10   caused GYRODATA additional special damages consisting of the funds

11   GYRODATA will be required to pay another to develop the T-70 gyroscope in light

12   of AIS and BAE SYSTEMS' absolute failure to develop the T-70 gyroscope, a loss

13   GYRODATA estimates is at least $2,500,000.

14       50.    All DOCUMENTS which support YOUR allegation in Paragraph 35 of

15   the COMPLAINT that AIS and BAE SYSTEMS' breach of the T-70 Contract has

16   caused GYRODATA damages for loss of net profit income resulting from the loss of

17   GWD jobs GYRODATA would have had if BAE SYSTEMS or AIS had delivered

18   the T-70 gyroscope according to the extended time specifications in the T-70

19   Contract.

20       51.    All DOCUMENTS which support YOUR allegation in Paragraph 35 of

21   the COMPLAINT that AIS and BAE SYSTEMS' breach of the T-70 Contract has

22   caused GYRODATA to lose market share.

23       52.    All DOCUMENTS which support YOUR allegation in Paragraph 40 of

24   the COMPLAINT that GYRODATA has incurred costs in having to repair broken T-

25   100 gyroscopes rather than replace them with new T-100 gyroscopes from AIS, due

26   to AIS's failure to deliver T-100 gyroscopes.

27

28

1    53.   All DOCUMENTS which support YOUR allegation in Paragraph 40 of

2 the COMPLAINT that it lost net profit income as a result of AIS not timely

3 delivering T-100s at a rate of 10 to 14 per month.

4    54.   All DOCUMENTS which support YOUR allegations that AIS is liable

5 for fraud.

6    55.   All DOCUMENTS which support YOUR allegations that the BAE

7 SYSTEMS DEFENDANTS are liable for fraud.

8    56.   All DOCUMENTS which support YOUR allegation in Paragraph 42 of

9 the COMPLAINT that Defendants, through their managerial employees and officers,

10 including Carol Marinello, made a series of representations to GYRODATA designed

11 to keep GYRODATA quiescent and to induce it to continue buying T-100 gyroscopes

12 from BAE Inertial without complaint.

13    57.   All DOCUMENTS which support YOUR allegation in Paragraph 42 of

14 the COMPLAINT that the BAE Defendants had determined, perhaps even in advance

15 of the existence of the T-70 Contract, but certainly before all milestones of the T-70

16 Contract had been completed, to close Westlake Village, California facility and

17 disband the BAE California Team assigned to Implement BAE Inertial's obligations

18 under the T-70 Contract.

19    58.   All DOCUMENTS which support YOUR allegation in Paragraph 43 of

20 the COMPLAINT that the decision to close the Westlake Village facility and to

21 terminate its employees was fatal to the project.

22    59.   All DOCUMENTS which support YOUR allegation in Paragraph 43 of

23 the COMPLAINT that in correspondence in 2004 and at meetings occurring during

24 2005 and 2006, Marinello repeatedly represented, among other things, that (1) the

25 Westlake Village facility would not be closed until production of the T-100 was up

26 and running in Cheshire; (2) the Cheshire facility was more than adequate to meet T-

27 100 production needs; (3) the Westlake Village facility and its employees would be

28 retained as a research group for the T-70 project, even when other aspects of the

- 11 -

1  facility would be closed for the consolidation; and (4) the personnel at the Cheshire

2  facility were more than adequately prepared to complete the T-70 Contract and any

3  other work GYRODATA desired.

4       60.    All DOCUMENTS which support YOUR allegation in Paragraph 44 of

5  the COMPLAINT regarding the April 22, 2004 letter from Carol Marinello and the

6  purported "assurances" made therein.

7       61.    All DOCUMENTS which support YOUR allegation in Paragraph 45 of

8  the COMPLAINT that the representations made Carol Marinello were false at the

9  time they were made.

10      62.    All DOCUMENTS which support YOUR allegation in Paragraph 45 of

11  the COMPLAINT that the BAE Inertial fell behind on as many as 42 gyros under a

12  given purchase order.

13      63.    All DOCUMENTS which support YOUR allegation in Paragraph 45 of

14  the COMPLAINT that BAE  Inertial never built a back-up inventory of T-100s in

15  Westlake Village, which meant GYRODATA suffered as a result of every start-up

16  issue that abounded at the Cheshire facility.

17      64.    All DOCUMENTS which support YOUR allegation in Paragraph 45 of

18  the COMPLAINT that contrary to Carol Marinello's representation, program

19  management and engineering authority did not remain in Westlake because BAE

20  Systems closed down the Westlake facility and terminated its employees.

21      65.    All DOCUMENTS which support YOUR allegation in Paragraph 46 of

22  the COMPLAINT that the BAE Defendants made misrepresentations regarding the

23  T-70.

24      66.    All DOCUMENTS which support YOUR allegation in Paragraph 46 of

25  the COMPLAINT that at the August 2005 meetings, the BAE Defendants told

26  GYRODATA'S principals that by early 2006, BAE Inertial would present

27  GYRODATA with proof-of-concept models of T-100s with "brazed " features to

28  show how brazed features would work for the T-70 prototypes.

- 12 -

67.   All DOCUMENTS which support YOUR allegation in Paragraph 46 of the COMPLAINT that Carol Marinello told GYRODATA that although BAE Systems was opening the Cheshire facility, the Westlake Village facility would remain open as a "research" facility for the T-70 and other projects, and the transition to Cheshire would be seamless.

68.   All DOCUMENTS which support YOUR allegation in Paragraph 48 of the COMPLAINT that Carol Marinello assured GYRODATA that only "lower end" units were going to Cheshire, while "higher end" units (such as the T-70) would stay in California where BAE Inertial employees would continue with research and development.

69.   All DOCUMENTS which support YOUR allegation in Paragraph 49 of the COMPLAINT that Carol Marinello's representations regarding the Westlake Village facility were false.

70.   All DOCUMENTS which support YOUR allegation in Paragraph 50 of the COMPLAINT that BAE Systems acknowledged its failures in presentations it gave to GYRODATA'S principals throughout 2006 and 2007.

71.   All DOCUMENTS which support YOUR allegation in Paragraph 50 of the COMPLAINT that at every meeting, the BAE Defendants told GYRODATA that the BAE Defendants were remedying the problems in T-100 production and T-70 development.

72.   All DOCUMENTS which support YOUR allegation in Paragraph 50 of the COMPLAINT that Carol Marinello told GYRODATA that BAE Systems and/or BAE Inertial would manufacture T-100 gyroscopes at a rate of a minimum of ten (10) units per month and a maximum of fourteen (14) units per month by January 2006.

73.   All DOCUMENTS which support YOUR allegation in Paragraph 50 of the COMPLAINT that Carol Marinello made statements to GYRODATA with the intent to induce GYRODATA to continue to make payments to BAE Systems and

- 13 -

1  BAE Inertial, when she knew that the BAE Defendants could not or would not follow
2  through on their promises.

3       74.   All DOCUMENTS which support YOUR allegation in Paragraph 51 of
4  the COMPLAINT that Carol Marinello directly misrepresented material facts with
5  the intent to deceive GYRODATA to continue paying BAE Systems and BAE
6  Inertial for gyroscopes BAE Systems/BAE Inertial did not produce.

7       75.   All DOCUMENTS which support YOUR allegations that the BAE
8  SYSTEM DEFENDANTS tortiously interfered with the T-100 contracts.

9       76.   All DOCUMENTS which support YOUR allegation in Paragraph 55 of
10 the COMPLAINT that the BAE Defendants intentionally induced AIS to breach the
11 T-100 contracts.

12      77.   All DOCUMENTS which support YOUR allegation in Paragraph 55 of
13 the COMPLAINT that as a result of the BAE Defendants' intentional interference,
14 AIS breached the T-100 contracts.

15      78.   All DOCUMENTS which support YOUR allegations that the BAE
16 SYSTEM DEFENDANTS tortiously interfered with the T-70 Contract.

17      79.   All DOCUMENTS which support YOUR allegation in Paragraph 58 of
18 the COMPLAINT that the BAE Defendants intentionally induced BAE Inertial n.k.a.
19 AIS to breach the T-70 contracts.

20      80.   All DOCUMENTS which support YOUR allegation in Paragraph 58 of
21 the COMPLAINT that the BAE Defendants tortiously interfered with the T-70
22 contracts.

23      81.   All DOCUMENTS which support YOUR allegation in Paragraph 58 of
24 the COMPLAINT that as a result of the BAE Defendants' intentional interference,
25 AIS breached the T-70 Contract with GYRODATA.

26      82.   All DOCUMENTS regarding the capacity, manufacture, development,
27 delivery, repair and/or research with respect to the T-70 and the T-100 gyroscopes.

28

- 14 -

83.   All DOCUMENTS regarding all of the purported misrepresentations the BAE SYSTEMS DEFENDANTS made to YOU.

84.   All DOCUMENTS that evidence any and all payments YOU made to AIS and/or the BAE SYSTEMS DEFENDANTS in connection with the T-100 and/or T-70 contracts.

85.   All DOCUMENTS regarding the basis and any support for YOUR claim of damages, including, but not limited to YOUR use of other gyroscopes.

86.   The rate-gyro sensor currently used in YOUR Surveyor X-4.

87.   The mechanized housing currently used in YOUR Surveyor X-4.

88.   All DOCUMENTS RELATED TO drawing(s) for the rate-gyro sensor currently used in YOUR Surveyor X-4.

89.   All DOCUMENTS RELATED TO drawing(s) for the mechanized housing currently used in YOUR, Surveyor X-4.

90.   The detailed parts list(s) for the rate-gyro sensor currently used in YOUR Surveyor X-4.

91.   The detailed parts lists) for the mechanized housing currently used in YOUR. Surveyor X-4.

92.   The detailed drawing(s) for each part listed in the parts list for the rate-gyro sensor currently used in YOUR Surveyor X-4.

93.   The detailed drawing(s) for each part listed in the parts list for the mechanized housing currently used in YOUR Surveyor X-4.

94.   The drawing change list(s) for the rate--gyro sensor currently used in YOUR Surveyor X-4.

95.   The drawing change list(s) for the mechanized housing currently used in YOUR Surveyor X-4.

96.   The detailed drawing(s) for each change in the design of the rate-gyro sensor currently used in YOUR Surveyor X-4.

- 15 -

97. The detailed drawing(s) for each change in the design of the mechanized housing currently used in YOUR Surveyor X-4.

98. All DOCUMENTS RELATED TO drafts of Table One Preliminary Requirements For Sensor attached as Exhibit 1.

99. All DOCUMENTS RELATED TO Table One Preliminary Requirements For Sensor attached as Exhibit 1.

100. All DOCUMENTS RELATED TO drafts of Conditions of Agreement attached as Exhibit 2.

101. All DOCUMENTS RELATED TO paragraphs 1-11 of Conditions of Agreement.

102. All DOCUMENTS RELATED TO GYRODATA Purchase Order No. 178310 attached as Exhibit 3.

103. All DOCUMENTS RELATE) TO any agreement between any DEFENDANT and GYRODATA RELATED TO either the development of the T-70 or the production of the T-100.

104. All DOCUMENTS which support or form the basis of Steve Klopp's e-mail to Art Siegel dated August 24, 2006 attached as Exhibit 4.

105. All DOCUMENTS concerning agreements between any BAE RELATED ENTITY and Dominic Santogrossi RELATED TO the protection of technology either developed or learned of during his employment with any BAE RELATED ENTITY.

106. All DOCUMENTS concerning agreements between any BAE RELATED ENTITY and John Dizon RELATED TO the protection of technology either developed or learned of during his employment with any BAE RELATED ENTITY.

107. All DOCUMENTS concerning agreements between any BAE RELATED ENTITY and Dan Golden RELATED TO the protection of technology

- 16 -

1 either developed or learned of during his employment with any BAE RELATED
2 ENTITY.

3    108. All DOCUMENTS concerning agreements between any BAE
4 RELATED ENTITY and Chris Persico RELATED TO the protection of technology
5 either developed or learned of during his employment with any BAE RELATED
6 ENTITY.

7    109. All DOCUMENTS RELATED TO any agreement Dominic Santogrossi
8 was required to sign as a result of his initial or continued employment by
9 GYRODATA.

10    110. All DOCUMENTS RELATED TO any agreement John Dizon was
11 required to sign as a result of his initial or continued employment by GYRODATA.

12    111. All DOCUMENTS RELATED TO any agreement Dan Golden was
13 required to sign as a result of his initial or continued employment by GYRODATA.

14    112. All DOCUMENTS RELATED TO any agreement Chris Persico was
15 required to sign as a result of his initial or continued employment by GYRODATA.

16    113. All DOCUMENTS RELATED TO any agreement between Dominic
17 Santogrossi and GYRODATA RELATED TO his employment.

18    114. All DOCUMENTS RELATED TO any agreement between John Dizon
19 and GYRODATA RELATED TO his employment.

20    115. All DOCUMENTS RELATED TO any agreement between Dan Golden
21 and GYRODATA RELATED TO his employment.

22    116. All DOCUMENTS RELATED TO any agreement between Chris
23 Persico and GYRODATA RELATED TO his employment.

24    117. All DOCUMENTS reflecting PLAINTIFF'S inventory of T-100s from
25 2003 to present.

26    118. All COMMUNICATIONS between PLAINTIFF and any supplier
27 RELATED TO the development of a T-70 like gyroscope.

28

- 17 -

119.  All writings between PLAINTIFF and any supplier RELATED TO the manufacture of any component of a T-70 like gyroscope.

120.  All DOCUMENTS exchanged between Sid Meltzner and GYRODATA RELATED TO BAE RELATED ENTITIES, the BAE SYSTEMS DEFENDANTS, T-70, T-100 and/or any replacement gyro for the T-70 or T-100.

121.  All DOCUMENTS exchanged between Ernie Smith and GYRODATA RELATED TO BAE RELATED ENTITIES, the BAE SYSTEMS DEFENDANTS, T-70, T-100 and/or any replacement gyro for the T-70 or T-100.

122.  All DOCUMENTS exchanged between Dan Golden (prior to being hired by GYRODATA) and GYRODATA RELATED TO BAE RELATED ENTITIES, the BAE SYSTEMS DEFENDANTS, T-70, T-100 and/or any replacement gyro for the T-70 or T-100.

123.  All COMMUNICATIONS between Sid Meltzner and GYRODATA RELATED TO BAE RELATED ENTITIES, the BAE SYSTEMS DEFENDANTS, T-70, T-100 and/or any replacement gyro for the T-70 or T-100.

124.  All COMMUNICATIONS between Ernie Smith and GYRODATA RELATED TO BAE RELATED ENTITIES, the BAE SYSTEMS DEFENDANTS, T-70, T-100 and/or any replacement gyro for the T-70 or T-100.

125.  All COMMUNICATIONS between Dan Golden (prior to being hired by GYRODATA) and GYRODATA RELATED TO BAE RELATED ENTITIES, the BAE SYSTEMS DEFENDANTS, T-70, T-100 and/or any replacement gyro for the T-70 or T-100.

126.  All DOCUMENTS analyzing purported problems with the T-70 design.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Rule 30(b)(2) and Rule 34 of the Federal Rules of Civil Procedure, the BAE SYSTEMS DEFENDANTS request that Plaintiff GYRODATA respond in writing and under oath separately to each type or category of items set forth herein and produce for

- 18 -

1 inspection in the time and manner pursuant to Federal Rules of Civil Procedure, the
2 DOCUMENTS and tangible items set out in these Requests.

3     If Plaintiff asserts a privilege or any other basis for its refusal to produce one or
4 more of the requested documents, as defined below, it shall provide a log in
5 accordance with Rule 26(b)(5) of the Federal Rules of Civil Procedure describing in
6 detail the DOCUMENTS or tangible items withheld from production and the asserted
7 bases for refusing to produce them. Defendant will take the position that a failure to
8 respond in a timely manner constitutes a waiver of all objections.

9 **REQUEST FOR PRODUCTION NO. 1:**
10     All contracts between Condor Pacific (as defined by YOU in the
11 COMPLAINT at Paragraph 14) and PLAINTIFF RELATED TO the design,
12 manufacture or repair of dynamically tuned gyroscopes.

13 **REQUEST FOR PRODUCTION NO.2:**
14     All DOCUMENTS supporting PLAINTIFF'S claim that DEFENDANTS failed
15 to fill T-100 gyroscope purchase orders, as alleged in YOUR COMPLAINT.

16 **REQUEST FOR PRODUCTION NO.3:**
17     All DOCUMENTS supporting PLAINTIFF'S claim that it lost orders as a
18 result of DEFENDANTS' failure to produce T-100 gyroscope purchase orders.

19 **REQUEST FOR PRODUCTION N0.4:**
20     All DOCUMENTS generated by YOU, any BAE RELATED ENTITY, AIS or
21 any other PERSON RELATED TO Purchase Order 201520, dated May 18, 2004.

22 **REQUEST FOR PRODUCTION NO. 5:**
23     All DOCUMENTS generated by YOU, any BAE RELATED ENTITY, AIS or
24 any other PERSON RELATED TO Purchase Order 61010, dated February 16, 2005.

25 **REQUEST FOR PRODUCTION NO. 6:**
26     All DOCUMENTS generated by YOU, any BAE RELATED ENTITY, AIS or
27 any other PERSON RELATED TO Purchase Order 61121, dated August 12, 2005.

28

- 19 -

1 **REQUEST FOR PRODUCTION NO.7:**

2     All DOCUMENTS generated by YOU, any BAE RELATED ENTITY, AIS or

3 any other PERSON RELATED TO Purchase Order 61420, dated June 27, 2006.

4 **REQUEST FOR PRODUCTION NO.8:**

5     All DOCUMENTS generated by YOU, any BAE RELATED ENTITY, AIS or

6 any other PERSON RELATED TO Purchase Order 61706, dated January 26, 2007.

7 **REQUEST FOR PRODUCTION NO. 9:**

8     All DOCUMENTS generated by YOU, any BAE RELATED ENTITY, AIS or

9 any other PERSON RELATED TO Purchase Order 61993, dated October 5, 2007.

10 **REQUEST FOR PRODUCTION NO. 10:**

11     All DOCUMENTS generated by YOU, any BAE RELATED ENTITY, AIS or

12 any other PERSON RELATING TO any unfilled order for Purchase Order 201520.

13 **REQUEST FOR PRODUCTION NO. 11.:**

14     All DOCUMENTS generated by YOU, any BAE RELATED ENTITY, AIS or

15 any other PERSON RELATING TO any unfilled order for Purchase Order 61010.

16 **REQUEST FOR PRODUCTION NO. 12:**

17     All DOCUMENTS generated by YOU, any BAE RELATED ENTITY, AIS or

18 any other PERSON RELATING TO any unfilled order for Purchase Order 61121.

19 **REQUEST FOR PRODUCTION NO. 13:**

20     All DOCUMENTS generated by YOU, any BAE RELATED ENTITY, AIS or

21 any other PERSON RELATING TO any unfilled order for Purchase Order 61420.

22 **REQUEST FOR PRODUCTION NO. 14:**

23     All DOCUMENTS generated by YOU, any BAE RELATED ENTITY, AIS or

24 any other PERSON RELATING TO any unfilled order for Purchase Order 61706.

25 **REQUEST FOR PRODUCTION NO. 15:**

26     All DOCUMENTS generated by YOU, any BAE RELATED ENTITY, AIS or

27 any other PERSON RELATING TO any unfilled order for Purchase Older 61993.

28

- 20 -

**REQUEST FOR PRODUCTION NO. 16:**

All written contracts, including changes thereto, between any BAE RELATED ENTITY and/or AIS and GYRODATA RELATED TO the T-100.

**REQUEST FOR PRODUCTION NO. 17:**

All written contracts, including changes thereto, between any BAE RELATED ENTITY and/or AIS and GYRODATA RELATED TO the T-70.

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS which support YOUR allegation in Paragraph 19 of the COMPLAINT that under the terms and conditions of the T-70 Contract, BAE SYSTEMS promised to provide GYRODATA with gyroscopes that BAE SYSTEMS would manufacture according to specifications agreed upon by the parties and incorporated into the T-70 Contract.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS which support YOUR allegation in Paragraph 19 of the COMPLAINT that GYRODATA understood that BAE Systems' work on the T-70 Contract was to be performed by employees of BAE SYSTEMS' subsidiary, BAE INERTIAL.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS which support YOUR allegation in Paragraph 20 of the COMPLAINT that the T-70 Contract stipulated that BAE Systems was to provide, and GYRODATA agreed to purchase, an additional one thousand (1,000) gyroscopes, priced between nine thousand dollars ($9,000) and nine thousand five hundred dollars ($9,500) each.

**REQUEST FOR PRODUCTION NO.21:**

All DOCUMENTS which support YOUR allegation in Paragraph 20 of the COMPLAINT that BAE SYSTEMS agreed that it would sell the T-70 gyroscopes under "most favored nations" like pricing provisions, under which GYRODATA would benefit from any economies of scale encountered in production of the T-70.

- 21 -

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS which support YOUR allegation in Paragraph 21 of the COMPLAINT that the parties agreed to extend the delivery date of the T-70 gyroscopes from the originally planned date of May 2004 to at least the fall of 2005,

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS which support YOUR allegation in Paragraph 22 of the COMPLAINT that a BAE RELATED ENTITY required the departing (Westlake Village) employees to sign non-compete contracts that would preclude them from continuing work on the T-70 project.

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS which support YOUR allegation in Paragraph 22 of the COMPLAINT that DEFENDANTS, planned from the time BAE SYSTEMS acquired Condor Pacific to close the Westlake facility and move Condor Pacific's manufacturing to Cheshire, Connecticut.

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS which support YOUR allegation in Paragraph 22 of the COMPLAINT that the BAE Defendants or BAE Inertial knew of these impending changes many months if not years before advising GYRODATA and inducing GYRODATA to continue to order the T-100 gyroscopes from BAE Inertial and may even have known of them before BAE Systems entered into the T-70 Contract.

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS which support YOUR allegation in Paragraph 22 of the COMPLAINT that Greg White planned from the time BAE Systems acquired Condor Pacific to close the Westlake facility and move Condor Pacific's manufacturing to Cheshire, Connecticut.

**REQUEST FOR PRODUCTION NO. 27:**

All DOCUMENTS which support YOUR allegation in Paragraph 23 of the COMPLAINT that the BAE Defendants and/or BAE Inertial gave specific and

- 22 -

1  repeated assurances that production of the T-100 gyroscope would not be delayed or
2  impaired by the move to Cheshire, Connecticut, and that the facilities there were
3  appropriate and suited for production.

4  **REQUEST FOR PRODUCTION NO. 28:**

5       All DOCUMENTS which support YOUR allegation in Paragraph 23 of the
6  COMPLAINT that the BAE Defendants and/or BAE Inertial gave specific and
7  repeated assurances that the Westlake Village facility would not be closed until the
8  production of T-100 units was online and functioning effectively in Connecticut.

9  **REQUEST FOR PRODUCTION NO. 29:**

10      All DOCUMENTS which support YOUR allegation in Paragraph 23 of the
11  COMPLAINT that the BAE Defendants and/or BAE Inertial gave specific and
12  repeated assurances that although the bulk of the Westlake Village production facility
13  would be closed, a portion of it would remain open as a "research facility" and that
14  projects similar to and including the development of the T-70 gyroscope would
15  continue there.

16  **REQUEST FOR PRODUCTION NO. 30:**

17      All DOCUMENTS which support YOUR allegation in Paragraph 24 of the
18  COMPLAINT that when BAE Systems (directly or through one of the BAE
19  RELATED ENTITIES) closed the Westlake Village facility, the Cheshire facility
20  was nowhere near full timely production and that deliveries of the T-100 lagged, with
21  many not being shipped at all.

22  **REQUEST FOR PRODUCTION NO. 31:**

23      All DOCUMENTS which support YOUR allegation in Paragraph 24 of the
24  COMPLAINT that BAE Systems (directly or through one of the BAE RELATED
25  ENTITIES) required the former employees to enter into covenants not to compete as
26  conditions of their severance.

27

28

- 23 -

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS which support YOUR allegation in Paragraph 25 of the COMPLAINT that after closing the Westlake Village facility, BAE Systems abandoned the T-70 Contract.

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS which support YOUR allegation in Paragraph 26 of the COMPLAINT that GYRODATA made several attempts to allow BAE Inertial to cure the failure resulting from closing Westlake Village facility and requested permission from BAE Inertial to repair and/or manufacture T-100s itself.

**REQUEST FOR PRODUCTION NO. 34:**

All DOCUMENTS which support YOUR allegation in Paragraph 26 of the COMPLAINT that BAE Inertial refused to allow GYRODATA to repair and/or manufacture T-100.

**REQUEST FOR PRODUCTION NO. 35:**

All DOCUMENTS which support YOUR allegation in Paragraph 26 of the COMPLAINT that BAE Inertial told GYRODATA that while it was not "economical" for BAE Inertial to repair the T-100s, BAE Inertial would nonetheless like to submit a quotation to GYRODATA for the repair work.

**REQUEST FOR PRODUCTION NO. 36:**

All DOCUMENTS which support YOUR allegation in Paragraph 26 of the COMPLAINT that BAE Inertial told GYRODATA of BAE Inertial was "unable " or "elected not to" repair the T-100s, GYRODATA would have to obtain a license from BAE Inertial to repair the T-100s itself.

**REQUEST FOR PRODUCTION NO. 37:**

All DOCUMENTS which support YOUR allegation in Paragraph 26 of the COMPLAINT that BAE Inertial told GYRODATA that GYRODATA would have to obtain a license from BAE Inertial to manufacture the T-100s itself.

- 24 -

**REQUEST FOR PRODUCTION NO. 38:**

All DOCUMENTS which support YOUR allegation in Paragraph 27 of the COMPLAINT that BAE Inertial was the only company that manufactured the T-100 and/or T-70 to necessary specifications.

**REQUEST FOR PRODUCTION NO. 39:**

All DOCUMENTS which support YOUR allegation in Paragraph 28 of the COMPLAINT that throughout the fall of 2006 and spring of 2007, BAE Inertial gave GYRODATA just enough explanation to keep GYRODATA waiting on "empty promises".

**REQUEST FOR PRODUCTION NO. 40:**

All DOCUMENTS which support YOUR allegation in Paragraph 29 of the COMPLAINT that GYRODATA has given BAE Systems and AIS numerous opportunities to fulfill their obligations under the T-70 and T-100 contracts.

**REQUEST FOR PRODUCTION NO. 41:**

All DOCUMENTS which support YOUR allegation in Paragraph 29 of the COMPLAINT that as of today, AIS remains in severe default on the production of T-100 gyroscopes and BAE Systems and AIS remain in default of the development of the T-70 gyroscope.

**REQUEST FOR PRODUCTION NO. 42:**

All DOCUMENTS which support YOUR allegation in Paragraph 30 of the COMPLAINT that AIS has not fulfilled the T-100 contracts, and it has become clear that BAE Systems and AIS have no intention of fulfilling the T-70 Contract.

**REQUEST FOR PRODUCTION NO. 43:**

All DOCUMENTS which support YOUR allegation in Paragraph 32 of the COMPLAINT that GYRODATA had the ability to perform and has performed all conditions, covenants, and promises required to be performed by it under the terms and conditions of the T-70 Contract.

- 25 -

**REQUEST FOR PRODUCTION NO. 44:**

All DOCUMENTS which support YOUR allegation in Paragraph 33 of the COMPLAINT that BAE SYSTEMS anticipatorily repudiated the T-70 Contract by terminating the BAE California Team, which had responsibility for BAE SYSTEMS' performance under that contract.

**REQUEST FOR PRODUCTION NO. 45:**

All DOCUMENTS which support YOUR allegation in Paragraph 33 of the COMPLAINT that by terminating the BAE California Team, BAE SYSTEMS precluded itself (and its apparent successor to its obligations under the T-70 Contract, AIS) from performing its obligations.

**REQUEST FOR PRODUCTION NO. 46:**

All DOCUMENTS which support YOUR allegation in Paragraph 33 of the COMPLAINT that despite demand, AIS and BAE SYSTEMS have made no adequate assurance of future performance and are making no effort whatsoever to perform the T-70 Contract.

**REQUEST FOR PRODUCTION NO. 47:**

All DOCUMENTS which support YOUR allegation in Paragraph 35 of the COMPLAINT that AIS and BAE SYSTEMS' breach of the T-70 Contract has caused GYRODATA damages in an amount that exceeds the minimum jurisdictional limit of this Court, including without limitation General losses, including the money GYRODATA already has paid to BAE Systems and AIS under the T-70 Contract.

**REQUEST FOR PRODUCTION NO. 48:**

All DOCUMENTS which support YOUR allegation in Paragraph 35 of the COMPLAINT that AIS and BAE SYSTEMS' breach of the T-70 Contract has caused GYRODATA damages in an amount that exceeds the minimum jurisdictional limit of this Court, including without limitation general losses, including the difference between the price at which AIS and BAE Systems agreed to produce T-70 gyroscopes ($9,000 to $9,500 per gyroscope) and the cost of procuring these from

- 26 -

1  another supplier (estimated at $20,000 to $25,000 per gyroscope), for each gyroscope

2  AIS and BAE Systems was obligated to produce, but did not produce, under the

3  contract.

4  **REQUEST FOR PRODUCTION NO. 49:**

5      All DOCUMENTS which support YOUR allegation in Paragraph 35 of the

6  COMPLAINT that AIS and BAE SYSTEMS' breach of the T-70 Contract has caused

7  GYRODATA additional special damages consisting of the funds GYRODATA will

8  be required to pay another to develop the T-70 gyroscope in light of AIS and BAE

9  SYSTEMS' absolute failure to develop the T-70 gyroscope, a loss GYRODATA

10  estimates is at least $2,500,000.

11  **REQUEST FOR PRODUCTION NO. 50:**

12      All DOCUMENTS which support YOUR allegation in Paragraph 35 of the

13  COMPLAINT that AIS and BAE SYSTEMS' breach of the T-70 Contract has caused

14  GYRODATA damages for loss of net profit income resulting from the loss of GWD

15  jobs GYRODATA would have had if BAE SYSTEMS or AIS had delivered the T-70

16  gyroscope according to the extended time specifications in the T-70 Contract.

17  **REQUEST FOR PRODUCTION NO. 51:**

18      All DOCUMENTS which support YOUR allegation in Paragraph 35 of the

19  COMPLAINT that AIS and BAE SYSTEMS' breach of the T-70 Contract has caused

20  GYRODATA to lose market share.

21  **REQUEST FOR PRODUCTION NO. 52:**

22      All DOCUMENTS which support YOUR allegation in Paragraph 40 of the

23  COMPLAINT that GYRODATA has incurred costs in having to repair broken T-100

24  gyroscopes rather than replace them with new T-100 gyroscopes from AIS, due to

25  AIS's failure to deliver T-100 gyroscopes.

26

27

28

1  **REQUEST FOR PRODUCTION NO. 53:**

2      All DOCUMENTS which support YOUR allegation in Paragraph 40 of the

3  COMPLAINT that it lost net profit income as a result of AIS not timely delivering T-

4  100s at a rate of 10 to 14 per month.

5  **REQUEST FOR PRODUCTION NO. 54:**

6      All DOCUMENTS which support YOUR allegations that AIS is liable for

7  fraud.

8  **REQUEST FOR PRODUCTION NO. 55:**

9      All DOCUMENTS which support YOUR allegations that the BAE SYSTEMS

10  DEFENDANTS are liable for fraud.

11  **REQUEST FOR PRODUCTION NO. 56:**

12      All DOCUMENTS which support YOUR allegation in Paragraph 42 of the

13  COMPLAINT that Defendants, through their managerial employees and officers,

14  including Carol Marinello, made a series of representations to GYRODATA designed

15  to keep GYRODATA quiescent and to induce it to continue buying T-100 gyroscopes

16  from BAE Inertial without complaint.

17  **REQUEST FOR PRODUCTION NO. 57:**

18      All DOCUMENTS which support YOUR allegation in Paragraph 42 of the

19  COMPLAINT that the BAE Defendants had determined, perhaps even in advance of

20  the existence of the T-70 Contract , but certainly before all milestones of the T-70

21  Contract had been completed, to close Westlake Village, California facility and

22  disband the BAE California Team assigned to Implement BAE Inertial's obligations

23  under the T-70 Contract.

24  **REQUEST FOR PRODUCTION NO. 58:**

25      All DOCUMENTS which support YOUR allegation in Paragraph 43 of the

26  COMPLAINT that the decision to close the Westlake Village facility and to terminate

27  its employees was fatal to the project.

28

- 28 -

**REQUEST FOR PRODUCTION NO. 59:**

All DOCUMENTS which support YOUR allegation in Paragraph 43 of the COMPLAINT that in correspondence in 2004 and at meetings occurring during 2005 and 2006, Marinello repeatedly represented, among other things, that (1) the Westlake Village facility would not be closed until production of the T-100 was up and running in Cheshire; (2) the Cheshire facility was more than adequate to meet T-100 production needs; (3) the Westlake Village facility and its employees would be retained as a research group for the T-70 project, even when other aspects of the facility would be closed for the consolidation; and (4) the personnel at the Cheshire facility were more than adequately prepared to complete the T-70 Contract and any other work GYRODATA desired.

**REQUEST FOR PRODUCTION NO. 60:**

All DOCUMENTS which support YOUR allegation in Paragraph 44 of the COMPLAINT regarding the April 22, 2004 letter from Carol Marinello and the purported "assurances" made therein.

**REQUEST FOR PRODUCTION NO. 61:**

All DOCUMENTS which support YOUR allegation in Paragraph 45 of the COMPLAINT that the representations made Carol Marinello were false at the time they were made.

**REQUEST FOR PRODUCTION NO. 62:**

All DOCUMENTS which support YOUR allegation in Paragraph 45 of the COMPLAINT that the BAE Inertial fell behind on as many as 42 gyros under a given purchase order.

**REQUEST FOR PRODUCTION NO. 63:**

All DOCUMENTS which support YOUR allegation in Paragraph 45 of the COMPLAINT that BAE  Inertial never built a back-up inventory of T-100s in Westlake Village, which meant GYRODATA suffered as a result of every start-up issue that abounded at the Cheshire facility.

- 29 -

**REQUEST FOR PRODUCTION NO. 64:**

All DOCUMENTS which support YOUR allegation in Paragraph 45 of the COMPLAINT that contrary to Carol Marinello's representation, program management and engineering authority did not remain in Westlake because BAE Systems closed down the Westlake facility and terminated its employees.

**REQUEST FOR PRODUCTION NO. 65:**

All DOCUMENTS which support YOUR allegation in Paragraph 46 of the COMPLAINT that the BAE Defendants made misrepresentations regarding the T-70.

**REQUEST FOR PRODUCTION NO. 66:**

All DOCUMENTS which support YOUR allegation in Paragraph 46 of the COMPLAINT that at the August 2005 meetings, the BAE Defendants told GYRODATA'S principals that by early 2006, BAE Inertial would present GYRODATA with proof-of-concept models of T-100s with "brazed " features to show how brazed features would work for the T-70 prototypes.

**REQUEST FOR PRODUCTION NO. 67:**

All DOCUMENTS which support YOUR allegation in Paragraph 46 of the COMPLAINT that Carol Marinello told GYRODATA that although BAE Systems was opening the Cheshire facility, the Westlake Village facility would remain open as a "research" facility for the T-70 and other projects, and the transition to Cheshire would be seamless.

**REQUEST FOR PRODUCTION NO. 68:**

All DOCUMENTS which support YOUR allegation in Paragraph 48 of the COMPLAINT that Carol Marinello assured GYRODATA that only "lower end" units were going to Cheshire, while "higher end" units (such as the T-70) would stay in California where BAE Inertial employees would continue with research and development.

- 30 -

1  **REQUEST FOR PRODUCTION NO. 69:**

2      All DOCUMENTS which support YOUR allegation in Paragraph 49 of the

3  COMPLAINT that Carol Marinello's representations regarding the Westlake Village

4  facility were false.

5  **REQUEST FOR PRODUCTION NO. 70:**

6      All DOCUMENTS which support YOUR allegation in Paragraph 50 of the

7  COMPLAINT that BAE Systems acknowledged its failures in presentations it gave to

8  GYRODATA'S principals throughout 2006 and 2007.

9  **REQUEST FOR PRODUCTION NO. 71:**

10      All DOCUMENTS which support YOUR allegation in Paragraph 50 of the

11  COMPLAINT that at every meeting, the BAE Defendants told GYRODATA that the

12  BAE Defendants were remedying the problems in T-100 production and T-70

13  development.

14  **REQUEST FOR PRODUCTION NO. 72:**

15      All DOCUMENTS which support YOUR allegation in Paragraph 50 of the

16  COMPLAINT that Carol Marinello told GYRODATA that BAE Systems and/or

17  BAE Inertial would manufacture T-100 gyroscopes at a rate of a minimum of ten (10)

18  units per month and a maximum of fourteen (14) units per month by January 2006.

19  **REQUEST FOR PRODUCTION NO. 73:**

20      All DOCUMENTS which support YOUR allegation in Paragraph 50 of the

21  COMPLAINT that Carol Marinello made statements to GYRODATA with the intent

22  to induce GYRODATA to continue to make payments to BAE Systems and BAE

23  Inertial, when she knew that the BAE Defendants could not or would not follow

24  through on their promises.

25  **REQUEST FOR PRODUCTION NO. 74:**

26      All DOCUMENTS which support YOUR allegation in Paragraph 51 of the

27  COMPLAINT that Carol Marinello directly misrepresented material facts with the

28

1  intent to deceive GYRODATA to continue paying BAE Systems and BAE Inertial

2  for gyroscopes BAE Systems/BAE Inertial did not produce.

3  **REQUEST FOR PRODUCTION NO. 75:**

4      All DOCUMENTS which support YOUR allegations that the BAE SYSTEM

5  DEFENDANTS tortiously interfered with the T-100 contracts.

6  **REQUEST FOR PRODUCTION NO. 76:**

7      All DOCUMENTS which support YOUR allegation in Paragraph 55 of the

8  COMPLAINT that the BAE Defendants intentionally induced AIS to breach the T-

9  100 contracts.

10  **REQUEST FOR PRODUCTION NO. 77:**

11      All DOCUMENTS which support YOUR allegation in Paragraph 55 of the

12  COMPLAINT that as a result of the BAE Defendants' intentional interference, AIS

13  breached the T-100 contracts.

14  **REQUEST FOR PRODUCTION NO. 78:**

15      All DOCUMENTS which support YOUR allegations that the BAE SYSTEM

16  DEFENDANTS tortiously interfered with the T-70 Contract.

17  **REQUEST FOR PRODUCTION NO. 79:**

18      All DOCUMENTS which support YOUR allegation in Paragraph 58 of the

19  COMPLAINT that the BAE Defendants intentionally induced BAE Inertial n.k.a.

20  AIS to breach the T-70 contracts.

21  **REQUEST FOR PRODUCTION NO. 80:**

22      All DOCUMENTS which support YOUR allegation in Paragraph 58 of the

23  COMPLAINT that the BAE Defendants tortiously interfered with the T-70 contracts.

24  **REQUEST FOR PRODUCTION NO. 81:**

25      All DOCUMENTS which support YOUR allegation in Paragraph 58 of the

26  COMPLAINT that as a result of the BAE Defendants' intentional interference, AIS

27  breached the T-70 Contract with GYRODATA.

28

**REQUEST FOR PRODUCTION NO. 82:**

All DOCUMENTS regarding the capacity, manufacture, development, delivery, repair and/or research with respect to the T-70 and the T-100 gyroscopes.

**REQUEST FOR PRODUCTION NO. 83:**

All DOCUMENTS regarding all of the purported misrepresentations the BAE SYSTEMS DEFENDANTS made to YOU.

**REQUEST FOR PRODUCTION NO. 84:**

All DOCUMENTS that evidence any and all payments YOU made to AIS and/or the BAE SYSTEMS DEFENDANTS in connection with the T-100 and/or T-70 contracts.

**REQUEST FOR PRODUCTION NO. 85:**

All DOCUMENTS regarding the basis and any support for YOUR claim of damages, including, but not limited to YOUR use of other gyroscopes.

**REQUEST FOR PRODUCTION NO. 86:**

The rate-gyro sensor currently used in YOUR Surveyor X-4.

**REQUEST FOR PRODUCTION NO. 87:**

The mechanized housing currently used in YOUR Surveyor X-4.

**REQUEST FOR PRODUCTION NO. 88:**

All DOCUMENTS RELATED TO drawing(s) for the rate-gyro sensor currently used in YOUR Surveyor X-4.

**REQUEST FOR PRODUCTION NO. 89:**

All DOCUMENTS RELATED TO drawing(s) for the mechanized housing currently used in YOUR Surveyor X-4.

**REQUEST FOR PRODUCTION NO. 90:**

The detailed parts list(s) for the rate-gyro sensor currently used in YOUR Surveyor X-4.

**REQUEST FOR PRODUCTION NO. 91:**

The detailed parts list(s) for the mechanized housing currently used in YOUR Surveyor X-4.

**REQUEST FOR PRODUCTION NO. 92:**

The detailed drawing(s) for each part listed in the parts list for the rate-gyro sensor currently used in YOUR Surveyor X-4.

**REQUEST FOR PRODUCTION NO. 93:**

The detailed drawing(s) for each part listed in the parts list for the mechanized housing currently used in YOUR Surveyor X-4.

**REQUEST FOR PRODUCTION NO. 94:**

The drawing change list(s) for the rate-gyro sensor currently used in YOUR Surveyor X-4.

**REQUEST FOR PRODUCTION NO. 95:**

The drawing change list(s) for the mechanized housing currently used in YOUR Surveyor X-4.

**REQUEST FOR PRODUCTION NO. 96:**

The detailed drawing(s) for each change in the design of the rate-gyro sensor currently used in YOUR Surveyor X-4.

**REQUEST FOR PRODUCTION NO. 97:**

The detailed drawing(s) for each change in the design of the mechanized housing currently used in YOUR. Surveyor X-4.

**REQUEST FOR PRODUCTION NO. 98:**

All DOCUMENTS RELATED TO drafts of Table One Preliminary Requirements For Sensor attached as Exhibit 1.

**REQUEST FOR PRODUCTION NO. 99:**

All DOCUMENTS RELATED TO Table One Preliminary Requirements For Sensor attached as Exhibit I.

- 34 -

**REQUEST FOR PRODUCTION NO. 100:**

All DOCUMENTS RELATED TO drafts of Conditions of Agreement attached as Exhibit 2.

**REQUEST FOR PRODUCTION NO. 101:**

All DOCUMENTS RELATED TO paragraphs 1-11 of Conditions of Agreement.

**REQUEST FOR PRODUCTION NO. 102:**

All DOCUMENTS RELATED TO GYRODATA Purchase Order No. 178310 attached as Exhibit 3.

**REQUEST FOR PRODUCTION NO. 103:**

All DOCUMENTS RELATED TO any agreement between any DEFENDANT and GYRODATA RELATED TO either the development of the T-70 or the production of the T-100.

**REQUEST FOR PRODUCTION NO. 104:**

All DOCUMENTS which support or form the basis of Steve Klopp's e-mail to Art Siegel dated August 24, 2006 attached as Exhibit 4.

**REQUEST FOR PRODUCTION NO. 105:**

All DOCUMENTS concerning agreements between any BAE RELATED ENTITY and Dominic Santogrossi RELATED TO. the protection of technology either developed or learned of during his employment with any BAE RELATED ENTITY.

**REQUEST FOR PRODUCTION NO. 106:**

All DOCUMENTS concerning agreements between any BAE RELATED ENTITY and John Dizon RELATED TO the protection of technology either developed or learned of during his employment with any BAE RELATED ENTITY.

- 35 -

1  **REQUEST FOR PRODUCTION NO. 107:**

2      All DOCUMENTS concerning agreements between any BAE RELATED

3  ENTITY and Dan Golden RELATED TO the protection of technology either

4  developed or learned of during his employment with any BAE RELATED ENTITY.

5  **REQUEST FOR PRODUCTION NO. 108:**

6      All DOCUMENTS concerning agreements between any BAE RELATED

7  ENTITY and Chris Persico RELATED TO the protection of technology either

8  developed or learned of during his employment with any BAE RELATED ENTITY.

9  **REQUEST FOR PRODUCTION NO. 109:**

10     All DOCUMENTS RELATED TO any agreement Dominic Santogrossi was

11  required to sign as a result of his initial or continued employment by GYRODATA.

12  **REQUEST FOR PRODUCTION NO. 110:**

13     All DOCUMENTS RELATED TO any agreement John Dizon was required to

14  sign as a result of his initial or continued employment by GYRODATA.

15  **REQUEST FOR PRODUCTION NO. 111:**

16     All DOCUMENTS RELATED TO any agreement Dan Golden was required to

17  sign as a result of his initial or continued employment by GYRODATA.

18  **REQUEST FOR PRODUCTION NO. 112:**

19     All DOCUMENTS RELATED TO any agreement Chris Persico was required

20  to sign as a result of his initial or continued employment by GYRODATA.

21  **REQUEST FOR PRODUCTION NO. 113:**

22     All DOCUMENTS RELATED TO any agreement between Dominic

23  Santogrossi and GYRODATA RELATED TO his employment.

24  **REQUEST FOR PRODUCTION NO. 114:**

25     All DOCUMENTS RELATED TO any agreement between John Dizon and

26  GYRODATA RELATED TO his employment.

27

28

- 36 -

**REQUEST FOR PRODUCTION NO. 115:**

All DOCUMENTS RELATED TO any agreement between Dan Golden and GYRODATA RELATED TO his employment.

**REQUEST FOR PRODUCTION NO. 116:**

All DOCUMENTS RELATED TO any agreement between Chris Persico and GYRODATA RELATED TO his employment.

**RE QUEST FOR PRODUCTION NO. 117.:**

All DOCUMENTS reflecting PLAINTIFF'S inventory of T-100s from 2003 to present,

**REQUEST FOR PRODUCTION NO. 118.:**

All COMMUNICATIONS between PLAINTIFF and any supplier RELATED TO the development of a T-70 like gyroscope.

**REQUEST FOR PRODUCTION NO. 119.**

All writings between PLAINTIFF and any supplier RELATED TO the manufacture of any component of a T-70 like gyroscope.

**REQUEST FOR PRODUCTION NO. 120.**

All DOCUMENTS exchanged between Sid Meltzner and GYRODATA RELATED TO BAE RELATED ENTITIES, the BAE SYSTEMS DEFENDANTS, T-70, T-100 and/or any replacement gyro for the T-70 or T-100.

**REQUEST FOR PRODUCTION NO. 121.**

All DOCUMENTS exchanged between Ernie Smith and GYRODATA RELATED TO BAE RELATED ENTITIES, the BAE SYSTEMS DEFENDANTS, T-70, T-100 and/or any replacement gyro for the T-70 or T-100.

**REQUEST FOR PRODUCTION NO. 122.**

All DOCUMENTS exchanged between Dan Golden (prior to being hired by GYRODATA) and GYRODATA RELATED TO BAE RELATED ENTITIES, the BAE SYSTEMS DEFENDANTS, T-70, T-100 and/or any replacement gyro for the T-70 or T-100.

- 37 -

1  **REQUEST FOR PRODUCTION NO. 123.**

2  All COMMUNICATIONS between Sid Meltzner and GYRODATA

3  RELATED TO BAE RELATED ENTITIES, the BAE SYSTEMS DEFENDANTS,

4  T-70, T-100 and/or any replacement gyro for the T-70 or T-100.

5  **REQUEST FOR PRODUCTION NO. 124.**

6  All COMMUNICATIONS between Ernie Smith and GYRODATA RELATED

7  TO BAE RELATED ENTITIES, the BAE SYSTEMS DEFENDANTS, T-70, T-100

8  and/or any replacement gyro for the T-70 or T-100.

9  **REQUEST FOR PRODUCTION NO. 125.**

10  All COMMUNICATIONS between Dan Golden (prior to being hired by

11  GYRODATA) and GYRODATA RELATED TO BAE RELATED ENTITIES, the

12  BAE SYSTEMS DEFENDANTS, T-70, T-100 and/or any replacement gyro for the

13  T-70 or T-100.

14  **REQUEST FOR PRODUCTION NO. 126.**

15  All DOCUMENTS analyzing purported problems with the T-70 design.

16  DATED: August 26, 2009            BUCHANAN INGERSOLL & ROONEY LLP
17

18

19  By: CYRIL J. DANTCHEV
20  MARY SUE HENIFIN
    SANDRA S. MORAN
21  Attorneys for Defendants
    BAE SYSTEMS, INC. and BAE SYSTEMS
22  CONTROLS INC.

- 38 -

1    CYRIL J. DANTCHEV (SBN 129585)
     Email: cyril.dantchev@bipc.com
2    BUCHANAN INGERSOLL & ROONEY LLP
     600 West Broadway, Suite 1100
3    San Diego, CA 92101
     Telephone: 619 239 8700
4    Facsimile: 619 702 3898

5    MARY SUE HENIFIN (*Admitted Pro Hac Vice*)
     Email: mary.henifin@bipc.com
6    SANDRA S. MORAN (*Admitted Pro Hac Vice*)
     Email: sandra.moran@bipc.com
7    BUCHANAN INGERSOLL & ROONEY PC
     700 Alexander Park, Suite 300
8    Princeton, NJ 08540

9    Attorneys for Defendants
     BAE SYSTEMS, INC. and BAE SYSTEMS CONTROLS INC.

10          UNITED STATES DISTRICT COURT

11         CENTRAL DISTRICT OF CALIFORNIA

12            LOS ANGELES DIVISION

13

| | |
|---|---|
| 14   GYRODATA INCORPORATED, a Texas corporation, | Case No. CV08-7897 GHK (FMOx) |
| 15 | **CERTIFICATE OF SERVICE** |
|           Plaintiff, | |
| 16 | Judge:       Hon. George H. King |
|     vs. | Courtroom:    650 |
| 17   ATLANTIC INERTIAL SYSTEMS | Complaint Filed: December 1, 2008 |
|     INC., a California and Delaware | |
| 18   corporation; BAE SYSTEMS, INC., a Delaware corporation; BAE SYSTEMS | |
| 19   CONTROLS, INC., a Delaware corporation; and DOES 1 - 10, | |
| 20 | |
|          Defendants. | |
| 21 | |

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE                         Case No.: CV08-7897 GHK (FMOX)

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is 600 West Broadway, Suite 1100, San Diego, CA 92101.  On August 26, 2009, I served the within document:

1.   **FIRST AMENDED NOTICE OF CONTINUED DEPOSITION OF PLAINTIFF GYRODATA'S CUSTODIAN OF RECORDS WITH REQUEST TO PRODUCE DOCUMENTS**

The following are those who are currently on the list to receive e-mail notices for this case:

- Cyril J. Dantchev
  cyril.dantchev@bipc.com

- Mary Sue Henifin
  mary.henifin@bipc.com

- Sandra S. Moran
  sandra.moran@bipc.com

- Chad S. Hummel
  chummel@manatt.com

- Travis A. Corder
  tcorder@manatt.com

- Thomas M. Fulkerson
  tfulkerson@tlotf.com

- Tammy J. Terry
  tterry@tlotf.com

- Craig N. Hentschel
  chentschel@dykema.com

- E. Lee Horton
  lhorton@dykema.com

☒ **By E-Mail:**  I caused all of the pages of the above-entitled document(s) to be electronically served on designated recipient(s) on August 26, 2009.

- 1 -

CERTIFICATE OF SERVICE                              Case No. 09 CV 0657 DMS (POR)

1  ☒ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) at the address(es) listed below. I placed the envelope or package for collection and
2  overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier on August 26, 2009.

3

4                                              **Service List**

5  Chad S. Hummel, Esq.              California Counsel for Plaintiff
   Travis A. Corder, Esq.            GYRODATA INCORPORATED
6  Manatt, Phelps & Phillips, LLP
   11355 West Olympic Boulevard      Telephone:  (310) 312-4000
7  Los Angeles, CA 90064-1614        Facsimile:  (310) 312-4224

8  Thomas A. Fulkerson, Esq.         Texas Counsel for Plaintiff
   Tammy J. Terry, Esq.              GYRODATA INCORPORATED
9  The Law Offices of Tom Fulkerson
   700 Louisiana Street, Suite 4700  Telephone:  (713) 654-5800
10 Houston, TX 77002-2773            Facsimile:  (713) 654-5801

11 E. Lee Horton, Esq.               Counsel for Co-Defendant
   Craig N. Hentschel, Esq.          ATLANTIC INERTIAL SYSTEMS, INC.
12 Dykema Gossett LLP
   333 So. Grand Avenue, Suite 2100  Telephone:  (213) 457-1800
13 Los Angeles, CA 90071            Facsimile:  (213) 457-1850

14

15 I declare under penalty of perjury under the laws of the State of California that the
16 above is true and correct.

17

18 Executed on August 26, 2009, at San Diego, California.

19                                        _____
                                              JACKIE FORJAIS
20

21

22

23

24

25

26

27

28
                                        - 2 -

CERTIFICATE OF SERVICE                    Case No. 09 CV 0657 DMS (POR)

# EXHIBIT  5

CYRIL J. DANTCHEV (SBN 129585)
Email: cyril.dantchev@bipc.com
BUCHANAN INGERSOLL & ROONEY LLP
600 West Broadway, Suite 1100
San Diego, CA 92101
Telephone:  (619) 239-8700
Facsimile:   (619) 702-3898

MARY SUE HENIFIN (Admitted *Pro Hac Vice*)
Email: mary.henifin@bipc.com
SANDRA S. MORAN (Admitted *Pro Hac Vice*)
Email: sandra.moran@bipc.com
RICHARD HAMILTON III (Admitted *Pro Hac Vice*)
Email: richard.hamilton@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
700 Alexander Park, Suite 300
Princeton, NJ 08540

Attorneys for Defendants
BAE SYSTEMS, INC. and BAE SYSTEMS CONTROLS INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

| | |
|---|---|
| GYRODATA INCORPORATED, a Texas corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ATLANTIC INERTIAL SYSTEMS INC., a California and Delaware corporation; BAE SYSTEMS, INC., a Delaware corporation; BAE SYSTEMS CONTROLS, INC., a Delaware corporation; and DOES 1 - 10,<br><br>Defendants. | Case No. CV08-07897 GHK(FMOx)<br><br>**DEFENDANT BAE SYSTEMS, INC. AND BAE SYSTEMS CONTROLS INC.'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF GYRODATA INCORPORATED**<br><br>Hon. Judge George H. King |

1        Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants BAE Systems, Inc.

2  ("BAE Systems") and BAE Systems Controls Inc. ("BAE Systems Controls") (together the "BAE

3  Systems Defendants"), serve upon Plaintiff Gyrodata Incorporated ("Gyrodata") the following

4  Request for Production. Plaintiff shall respond to the following request within thirty (30) days after

5  service of this request. Documents and things responsive to this request shall be produced at the

6  offices of Buchanan Ingersoll & Rooney PC, 700 Alexander Park, Suite 300, Princeton, New Jersey

7  08540, unless another location is agreed to by the parties or ordered by the Court.

8        If Plaintiff asserts a privilege or any other basis for its refusal to produce one or more of the

9  requested documents, as defined below, it shall provide a log in accordance with Rule 26(b)(5) of

10  the Federal Rules of Civil Procedure describing in detail the documents or tangible items withheld

11  from production and the asserted bases for refusing to produce them, Defendants will take the

12  position that a failure to respond in a timely manner constitutes a waiver of all objections.

13        **INSTRUCTIONS**

14      1.     These Document Requests require you to provide all information and documents

15  available to Plaintiff, including all information and documents available to Plaintiff through any

16  associated entity, employee or agent, including counsel.

17      2.     These Document Requests are deemed to be continuing so as to require the filing of

18  supplemental answers, and the production of additional documents, in the event Defendant or its

19  representatives (including counsel) learn additional facts not set forth in its answers or discover that

20  information given in its answers is erroneous or incomplete. Such supplemental answers may be

21  served, and such additional documents produced, from time to time but not later than thirty (30)

22  days after such further information or document are discovered or received.

23      3.     Each Document Request is to be answered separately and as completely as possible.

24  The fact that investigation is continuing or that discovery is not complete shall not be used as an

25  excuse for failure to answer as fully as possible. The omission of any name, fact or other item of

26  information from the answers shall be deemed a representation that such name, fact or item was not

27  known to Plaintiff, or its counsel or other representatives, at the time of service of the answers.

28

- 1 -

BAE SYSTEMS DEFENDANTS' SECOND RFP           CV08-07897 GHK (FMOx)

4.    Each Document Request shall be construed separately, and no Document Request shall be used to construe any other Document Request more narrowly than it otherwise would be construed.

5.    Each request seeks production of all applicable documents in their entirety.  The documents produced shall be organized and designated to correspond to the categories in the request or produced as they are kept in the usual course of business.  Any documents that must be removed from their original folders, binders, covers, or containers in order to be produced shall be identified in a matter so as to clearly specify the folder, binder, cover, or container from which such documents came.

6.    If you cannot supply precise information, state your best estimate or approximation (including your best approximation of dates by reference to other events when necessary designated as such).

7.    Please state any objections to the requests in writing and state specific reasons why the requested discovery should not be allowed.  if any documents are withheld under a claim of privilege or other protection from discovery, please provide the descriptive information required to determine whether the privilege applies.

8.    Clarification/burdensomeness.  In the event you believe that any of the requests contained herein are unclear or so ambiguous that you cannot frame a reasonable response, please contact the undersigned counsel for a clarification prior to the time the response of this request becomes due.  We will gladly provide additional definitions or clarification of the requests.  if you believe that one of more of the requests are unduly burdensome, we will be glad to discuss clarifications or potential limitations on the requests to reduce their burden, but again request that these issues be raised and resolved prior to the response deadline.

9.    Format.  Pursuant to Fed.R.Civ.P. 34(b)(a)(C), BAE Systems Defendants request paperless production in which responsive documents are produced in electronic format (electronic copies or images on CD-ROMs or DVD-ROMs) rather than hard copies and offers to produce documents in the same manner for the mutual convenience of the parties.  TIFF images are preferred, unless the original document is color coded in some meaningful way or is a color

- 2 -

1   photograph, in which case JEPG color images are preferred.  Please contact the undersigned counsel

2   to discuss the electronic format.

3         10.    Unless specifically noted otherwise, the relevant time frame of these Document

4   Requests shall be from January 1, 2002, until the date upon which responses hereto are due.

5         11.    If you believe that for any specific request that all responsive documents have been

6   previously produced, please note this in your response and for each type or category of responsive

7   document, identify the Bates range(s) that specifically identify the responsive documents.

8                            **DEFINITIONS**

9         1.    As used herein, "YOU" and "YOUR," shall mean GYRODATA INCORPORATED

10   ("GYRODATA" or "PLAINTIFF") and shall include but not be limited to its current and prior

11   directors, managers, officers, employees, partners, agents, representatives, predecessors, successors,

12   parents, subsidiaries, divisions or affiliates, or any person acting on behalf of any of the

13   aforementioned.

14         2.    As used herein, "COMMUNICATION" shall mean any and all written, oral,

15   telephonic or other utterances of any nature whatsoever, shared, shown and/or transferred between

16   and/or among any two or more persons or entities, including, but not limited to, any statements,

17   inquiries, discussions, conversations, dialogues, correspondence, consultations, negotiations,

18   agreements, understandings, meetings, letters, notations, telegrams, advertisements, interviews, and

19   all other DOCUMENTS.

20         3.    As used herein, "DOCUMENT(S)" means and includes any kind of printed,

21   recorded, written, graphic, photographic or sound recorded matter, however printed, produced,

22   reproduced, coded or stored, of any, kind or description, whether sent or received or not, including

23   originals, copies, reproductions, facsimiles, drafts, both sides of any such item, and including

24   without limitation all "writings", "recordings", and "photographs" as defined by Federal Rule of

25   Evidence 1001, and every other means of recording upon any tangible thing of any form of a

26   communication or representation, including letters, emails, words, pictures, sounds, or symbols, or

27   combinations thereof, and further including without limitation all objects or tangible things such as

28   computer tapes or diskettes, magnetic tapes, punch cards, computer printouts, mircrofilms, and all

- 3 -

1   other records kept by electronic, photographic or mechanical means, and any things similar to the

2   foregoing, by electronic, photographic or mechanical means, and any things similar to the

3   foregoing, however denominated by YOU.  If a DOCUMENT has been prepared in more than one

4   copy, and any copy was not identical or is no longer identical with the original by reason of a

5   subsequent notation or other modification of any kind whatever, including without limitation, notes

6   or modifications on the margins or backs of pages thereof, each non-identical copy is a separate

7   DOCUMENT.

8        4.     As used herein, the words "REFER", "RELATE", "CONCERN", and

9   "CONCERNING", and the phrases "REFERRING TO", "RELATING TO", "REFER TO",

10  "RELATE TO", or "RELATED TO", mean referring to, pertaining to, relating to, alluding to,

11  bearing upon, commenting upon, touching upon, regarding, concerning, recording, evidencing,

12  constituting, substantiating, discussing, mentioning, or otherwise affecting (directly or indirectly).

13       5.     As used herein, the words "DEFENDANT" or "AIS" mean Defendant ATLANTIC

14  INERTIAL SYSTEMS, INC., and shall include but not be limited to its current and prior directors,

15  managers, officers, employees, partners, agents, representatives, predecessors, successors, parents,

16  subsidiaries, divisions or affiliates, or any person acting on behalf of any of the aforementioned.

17       6.     As used herein, the word "BAE RELATED ENTITY(IES)" refers to BAE

18  SYSTEMS, BAE SYSTEMS INERTIAL PRODUCTS, INC and BAE SYSTEMS ELECTRONICS

19  & INTEGRATED SOLUTIONS.

20       7.     As used herein, the word "PERSON" or "PERSONS" mean and include any natural

21  person, individual, firm, association, corporation, partnership, joint venture, proprietorship, or other

22  legal entity and all representatives of such PERSON(S).

23       8.     As used herein, the word "COMPLAINT" refers to Plaintiff's unverified First

24  Amended Complaint in this action, filed in United States District Court, Central District on March

25  20, 2009.

26       9.     As used herein, the word "DEFENDANTS" shall include both AIS and any BAE

27  RELATED ENTITY.

28

- 4 -

10.     As used herein, the phrase "T-70-TYPE GYROSCOPE" shall mean any miniaturized, rugged gyroscope intended to supplement or replace the T-100 or G2000 gyroscopes in subsurface drilling applications, whether referring specifically to the "T-70" gyroscope designed by Defendants or any other gyroscope of similar design, utility, or purpose.

11.     As used herein, the phrase "T-100 GYROSCOPE" shall mean the T-100 gyroscope produced by Condor Pacific Inc. or Defendants, whether in its original condition or modified, repaired, or retrofitted by Gyrodata or any other entity, and whether or not it is installed into another tool, system, subassembly, or fixture.

## ITEMS TO BE PRODUCED

127)    Any document reflecting licenses, development agreements, or other contractual relationships between Gyrodata and the designer(s) or manufacturer(s) of flexures or other components utilized in conjunction with the model T-100 gyroscope.

128)    Any document reflecting licenses, development agreements, or other contractual relationships between Gyrodata and the any other entity regarding repair of the model T-100 gyroscope.

129)    Any document reflecting communications between Condor Pacific Industries of California Inc. (also referred to as "New Condor Pacific") regarding repair, manufacturing, production, design, or engineering of T-100 gyroscopes, whether in modified or repaired condition or not, or the T-70 or T-70-type gyroscopes.

130)    Any document received from any source regarding the closure or transfer of Defendants' Westlake Village facility and its functions, including, but not limited to, documents reflecting closure or transfer of manufacturing, production, engineering, design, development, or management operations.

131)    Any document regarding Daniel Golden's intellectual property or inventorship rights to flexure designs that may be utilized with either the T-100 or T-70-type gyroscopes, including any miniaturized gyroscopic sensor similar in concept or use to the T-70-type gyroscope, or any documents discussing a patent application for Golden's flexure design or the possible licensing of Golden's flexure design to any other entity.

- 5 -

1      132)   Any document regarding development of the T-70 or a T-70 type gyroscope.

2      133)   Any document regarding deployment of the T-100 in the X-4 Surveyor system or

3 tool, including, but not limited to, communications, engineering drawings, technical manuals, or

4 testing protocols regarding the application of the "Alltech flexure" to the T-100 sensor.

5      134)   Any document, including, but not limited to, correspondence, purchase orders,

6 technical drawings, or engineering plans, regarding development or procurement of a gyroscopic

7 sensor smaller than the T-100 as complement or alternative to a T-70 sensor developed by

8 Defendants.  This response extends to any documents reflecting in-house development or

9 development by third parties.

10      135)   Any communication between Daniel Golden and Tom Fulkerson or any employee

11 The Law Offices of Tom Fulkerson prior to Mr. Golden's commencement of employment with

12 Gyrodata, which, upon information and belief, was March 20, 2006.

13      136)   Any document reflecting communication between Daniel Golden and Gyrodata prior

14 to Mr. Golden's commencement of employment with Gyrodata, which, upon information and belief,

15 was March 20, 2006.

16      137)   Any document reflecting expenditures of time, effort, or money made by Gyrodata to

17 develop a miniaturized gyroscopic sensor for use in subsurface drilling in the oil and gas industry.

18      138)   Any document regarding the possible sale, licensing, or other use of a miniaturized

19 gyroscopic sensor in any context other than the guidance of subsurface drilling in the oil and gas

20 industry.

21      139)   Any document reflecting expenditures of time, effort, or money made by Gyrodata to

22 repair or modify the T-100 gyroscope for use in subsurface drilling in the oil and gas industry.

23      140)   Any document regarding the possible sale, licensing, or other use of a T-100

24 gyroscope, whether modified or repaired or not, in any context other than the guidance of

25 subsurface drilling in the oil and gas industry.

26      141)   Any documents describing pricing policies, guidelines, or related to the establishing

27 of prices for systems including the T-100, as modified or repaired or not, or T-70-type gyroscopes.

28

- 6 -

BAE SYSTEMS DEFENDANTS' SECOND RFP            CV08-07897 GHK (FMOx)

142)  Any documents reflecting the most recent estimates of revenue or income from T-100-based tools or systems prior to the beginning of the alleged breach of contract.

143)  Any documents reflecting estimates of revenue or income from T-100-based tools or systems subsequent to the beginning of the alleged breach of contract.

144)  Any documents reflecting planning for activities that would utilize a T-70-type gyroscope, including, but not limited to, business plans, strategic plans, financial plans, management reports, or documents regarding marketing, sale, lease, or license of a T-70-type gyroscope or systems or tools utilizing a T-70-type gyroscope.

145)  Any documents reflecting planning for activities that would utilize a T-100 gyroscope, including, but not limited to, business plans, strategic plans, financial plans, management reports, or documents regarding marketing, sale, lease, or license of a T-100 gyroscope or systems or tools utilizing a T-100 gyroscope.

146)  Any documents reflecting communications to customers or potential customers or to company personnel (including sales or marketing personnel) regarding the unavailability of any system utilizing the T-100 gyroscope.

147)  Any market studies, reports, forecasts, or analyses, including reports on competitors and competing products, market segments, market share, and consumer demand regarding the type of services that would utilize a T-70-type gyroscope.

148)  Any market studies, reports, forecasts, or analyses, including reports on competitors and competing products, market segments, market share, and consumer demand regarding the type of services that would utilize a T-100 gyroscope.

149)  Any industry data from sources outside of Gyrodata, including, but not limited to, industry reports, analyses, sales projections, or documents reflecting actual sales by company and product for the type of services that would utilize a T-70-type gyroscope.

150)  Any industry data from sources outside of Gyrodata, including, but not limited to, industry reports, analyses, sales projections, or documents reflecting actual sales by company and product for the type of services that would utilize a T-100 gyroscope.

- 7 -

1      151)  Any documents that describe Gyrodata's distribution and sales network for systems

2  including the T-100 or T-70-type gyroscopes.

3      152)  Any documents including, but not limited to, reports, analyses, and communication

4  with third parties, including potential customers, comparing the features, functions, capability,

5  advantages, disadvantages, performance, flaws or defects of any tools that incorporate the T-100 or

6  T-70-type gyroscope and any competing products or systems.

7      153)  Any communications with customers or potential customers regarding unavailability

8  of tools or systems that incorporate the T-100 or T-70-type gyroscope.

9      154)  Any cost-benefit analyses related to the production, distribution, leasing, or sale of

10  tools or systems that would incorporate a T-70-type gyroscope.

11      155)  Any document reflecting customers, by name, address, and contact person, who have

12  contracted with Gyrodata for tools or services that incorporate the T-100 gyro, whether modified

13  with the Alltech flexure or not (hereinafter "T-100 technology").  Provide income or revenue

14  information for each customer for each Gyrodata system that includes T-100 technology.

15      156)  All requests by current, past, or prospective customers seeking Gyrodata services

16  that would utilize T-100 technology, whether fulfilled or unfulfilled.  This request includes, but is

17  not limited to, bids or other solicitations for work that would include tools that employ T-100

18  technology.

19      157)  Any contracts, licenses, leases, or other agreements, between Gyrodata and any

20  customer for products or services that include use of the T-100 or T-70 type gyroscopes.

21      158)  Any documents that reflect Gyrodata's inventory of: 1) tools that utilize T-100

22  technology; 2) functioning T-100 gyros not installed in a tool; and 3) nonfunctional or "on the shelf"

23  T-100 gyros.  These documents should include, but are not limited to, an inventory of how many

24  tools using T-100 technology were in Gyrodata's possession at any given time and how many of

25  those tools were in use at any given time.

26      159)  Any documents reflecting all requests by current, past, or potential customers that

27  were unfulfilled due to a shortage of T-100 technology.

28

- 8 -

160)   Any documents reflecting all customers or potential customers, by name, address, and contact person, that Gyrodata asserts were potential customers for Gyrodata services that would require utilization of the T-70 gyro, or any other miniaturized gyro sensor based in any way on the T-100 gyro (hereinafter "T-70 technology").

161)   Any requests by customers or prospective customers seeking Gyrodata tools utilizing T-70 technology.  This request includes, but is not limited to, bids or other solicitations for work that would include tools that employ T-70 technology whether for GWD services or any other services that would utilize T-70 technology.

162)   Any documents that reflect Gyrodata's revenue for each tool that employs T-100 technology or T-70 technology.

163)   Any product catalogs or price lists that include systems or tools that include a T-100 or T-70 type gyroscope.

164)   Any documents that reflect any differences in the standard fee charged to customers for products or services that include a T-100 or T-70 type gyroscope and the actual fee charged, including any documents reflecting discounts, preferential pricing, "most favored nations" pricing agreements, or other pricing modifications.

165)   Any marketing or sales policies or procedures, including instructions given to sales and marketing personnel regarding products or services that include a T-100 or T-70 type gyroscope.

166)   Any sales documents, including but not limited to, sales force call reports or opportunity tracking reports that identify potential customers, competitors, products, and win/loss information for any client, customer, bid, or job that would utilize a tool or system that includes a T-100 gyroscope.

167)   Any sales documents, including but not limited to, sales force call reports or opportunity tracking reports that identify potential customers, competitors, products, and win/loss information for any client, customer, bid, or job that would utilize a tool or system that includes a T-70-type gyroscope.

168)   Any customer surveys that mention products or services that include a T-100 or T-70 type gyroscope or relate to the use of systems or tools that include a T-100 or T-70 type gyroscope.

169)   Any capital expenditure requests relating to investments undertaken or expected to be undertaken with respect to the production, distribution, licensing, leasing, or sale of a repaired, retrofitted or otherwise modified T-100 gyroscope.

170)   Any capital expenditure requests relating to investments undertaken or expected to be undertaken with respect to the production, distribution, licensing, leasing, or sale of a T-70-type gyroscope.

171)   Any reports or other documents relating to costs incurred for research and development of a T-70-type gyroscope.

172)   Any reports or other documents relating to costs incurred for research and development of modifications to the T-100 gyroscope.

173)   Any capital budgets that include information regarding the T-100 or T-70-type gyroscopes, including but not limited to, budgeting for research and development.


DATED:  November 2, 2009          BUCHANAN INGERSOLL & ROONEY PC


By:    CYRIL J. DANTCHEV
       MARY SUE HENIFIN
       SANDRA S. MORAN
       RICHARD HAMILTON III

       Attorneys for Defendants BAE SYSTEMS, INC. and BAE SYSTEMS CONTROLS INC.


- 10 -

# EXHIBIT  6

CYRIL J. DANTCHEV (SBN 129585)
Email: cyril.dantchev@bipc.com
BUCHANAN INGERSOLL & ROONEY LLP
600 West Broadway, Suite 1100
San Diego, CA 92101
Telephone: (619) 239-8700
Facsimile: (619) 702-3898

MARY SUE HENIFIN (Admitted *Pro Hac Vice*)
Email: mary.henifin@bipc.com
SANDRA S. MORAN (Admitted *Pro Hac Vice*)
Email: sandra.moran@bipc.com
RICHARD HAMILTON III (Admitted *Pro Hac Vice*)
Email: richard.hamilton@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
700 Alexander Park, Suite 300
Princeton, NJ 08540

Attorneys for Defendants
BAE SYSTEMS, INC., BAE SYSTEMS CONTROLS INC., and
BAE SYSTEMS INFORMATION AND ELECTRONIC SYSTEMS
INTEGRATION, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

| | |
|---|---|
| GYRODATA INCORPORATED, a Texas corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ATLANTIC INERTIAL SYSTEMS INC., a California and Delaware corporation; BAE SYSTEMS, INC., a Delaware corporation; BAE SYSTEMS CONTROLS, INC., a Delaware corporation; BAE SYSTEMS INFORMATION AND ELECTRONIC SYSTEMS INTEGRATION, INC. a Delaware corporation; and DOES 1 - 10,<br><br>Defendants. | Case No. CV08-07897 GHK(FMOx)<br><br>**DEFENDANTS BAE SYSTEMS, INC., BAE SYSTEMS CONTROLS INC., AND BAE SYSTEMS INFORMATION AND ELECTRONIC SYSTEMS INTEGRATION, INC'S FIRST SET OF INTERROGATORIES TO PLAINTIFF GYRODATA INCORPORATED**<br><br>Hon. Judge George H. King<br>Courtroom 650<br><br>Second Amended Complaint filed: October 30, 2009 |

REQUESTING PARTY:      BAE SYSTEMS INC., BAE SYSTEMS
                       CONTROLS, INC., AND BAE SYSTEMS
                       INFORMATION AND ELECTRONIC SYSTEMS
                       INTEGRATION, INC.

RESPONDING PARTY:      GYRODATA INCORPORATED

SET NUMBER:            ONE

Pursuant to rules 26 and 33 of the Federal Rules of Civil Procedure, the Requesting Party hereby asks that you answer the foregoing interrogatories.

You are required to respond to this request within 30 days from date of personal service (plus 3 days, if served by mail) in the form and manner required under rules 26 and 33 of the Federal Rules of Civil Procedure and of the Central District of California Civil Local Rules.

## DEFINITIONS

The following definitions shall apply throughout these Interrogatories:

1.      The terms "you," "your," "Gyrodata" and "Plaintiff" shall mean plaintiff Gyrodata Incorporated and all persons acting for or on behalf of Plaintiff, including counsel and, where and to the extent applicable, any present or former agents, employees, servants, representatives, attorneys, advisors, consultants, subcontractors or other persons acting for or on behalf of Plaintiff.  This definition is not intended to impose a discovery obligation on any person or entity that is not a party to the action.

2.      The terms "document" and "documents" are used in the broadest sense consistent with the Federal Rules of Civil Procedure and the Federal Rules of Evidence, and include without limitation the originals of any written, recorded, transcribed, punched, filmed, taped, graphic, or electronic material of any type, however and by whomever prepared, including, but not limited to, letters, memoranda, e-mails, reports, notes, studies, analyses, logbooks, diary or calendar entries, financial records, books, promotional materials, brochures, pamphlets, trade letters, textbook, articles, journals, magazines, and any other objects containing written, printed, spoken or photographic images or sounds, whether stored in paper or

- 1 -

electronic format, on a computer hard drive, floppy disc, or CD/DVD-ROM. The terms "document" and "documents" also include any and all copies of any documents that contain any notation or otherwise differ from the original and other copies and specifically includes any and all drafts of the above and any and all handwritten notes or notations in whatever form together with any attachments to any such documents. The terms "document" and "documents" additionally include copies of documents if the originals of documents are not in your possession, custody or control.

3.     The term "Amended Complaint" shall mean the Second Amended Complaint that Plaintiff filed in this action on or about October 30, 2009.

4.     The term "BAE" or "Defendant" shall mean defendant BAE Systems, Inc., BAE Systems Controls Inc., BAE Systems Information and Electronic Systems Integration, Inc., and all persons acting for or on behalf of BAE, including counsel and, where and to the extent applicable, any present or former agents, employees, servants, representatives, attorneys, advisors, consultants, subcontractors or other persons acting for or on behalf of BAE. This definition is not intended to impose a discovery obligation on any person or entity that is not a party to the action.

5.     The term "AIS" shall mean Atlantic Inertial Systems Inc. and all persons acting for or on behalf of AIS, including counsel and, where and to the extent applicable, any present or former agents, employees, servants, representatives, attorneys, advisors, consultants, subcontractors or other persons acting for or on behalf of AIS. This definition is not intended to impose a discovery obligation on any person or entity that is not a party to the action.

6.     The term "communication" is used in its broadest sense and includes, but is not limited to, any oral or written transmittal of information or request for information (in the form of facts, ideas, or otherwise) from one person to another, whether made in person, in a meeting, by telephone, letter, electronic mail, or by any other means, or a document made for the purpose of recording a communication idea, statement, opinion or belief.

- 2 -

7.     The term "person" means any natural person, corporation, partnership, association, governmental agency or department or any other entity of any kind.

8.     The terms "identify" or "identity of" when used with respect to a document mean to set forth the type of document (*e.g.,* letter), with the date, authors, recipients, custodians, title (if any), and a statement of the content of the document. If the document is no longer in your possession, custody or control, so state, identify the document to the best of your knowledge, and state what disposition was made of it, when and by whom.

9.     The terms "identify" or "identity of" when used with respect to a natural person mean to set forth his or her name, his or her business position and affiliation at the time in question, his or her last known business position and affiliation and, if he or she is not currently employed by you, his or her last known business and home address including telephone numbers.  Once a person has been fully identified in your answer such person may be identified thereafter by name alone.

10.     The terms "identify" or "identity of" when used with respect to an entity (as opposed to a natural person) mean to set forth the name of the entity, the legal status of the entity (*e.g.,* whether a corporation, limited partnership, general partnership, unincorporated association, etc.), the address and telephone number of the entity's main office and the nature of the business conducted by the entity.  Once an entity has been identified in accordance with this paragraph, only the name of that entity need be listed in response to subsequent Interrogatories requesting the identification of that entity.

11.     The terms "identify" or "identity of" when used with respect to a communication mean to set forth the identity of each person who made each communication, the identity of each person to whom each communication was made, the identity of each person who was present during each communication or received a copy of each communication, a complete description of the substance and content of

- 3 -

the communication, and the identity of each document that constitutes or memorializes each communication.

12.   "Describe with particularity" means to set forth *every* fact (including all related dates) concerning the subject of the interrogatory, including identifying all persons with knowledge of the subject, describing what you know or believe their knowledge to be, and identifying all documents and communications concerning the subject of the interrogatory.  In addition, when asked to "describe with particularity" the factual basis for an allegation or contention, set forth each and every fact necessary to support the contention or allegation, where, when, and from whom you learned each such fact, and each and every document that evidences, refers or relates to each such fact.

13.   "Regarding" and "concerning" mean referring to, relating to, discussing, reflecting, dealing with, analyzing, evaluating, estimating, constituting, describing, evidencing, or pertaining to in any way, either directly or indirectly, in whole or in part.

14.   "Product specifications" means all performance parameters that a product (in this case a gyroscopic sensor) must meet, how the product is to be tested, the electrical requirements of the product, and the interface requirements for the product.

15.   The singular form of a word shall be interpreted as the plural and the plural form of a word shall be interpreted as the singular whenever such interpretation brings within the scope of these Interrogatories any information or documents which might otherwise be considered to be beyond their scope.

16.   The use of the masculine gender shall be construed to include the feminine gender and the feminine gender shall be construed to include the masculine gender whenever the context reasonably allows or requires such construction.

17.   The present tense shall be construed to include the past tense and the past tense shall be construed to include the present tense whenever such interpretation

- 4 -

1 brings within the scope of these Interrogatories any information or documents which

2 might otherwise be considered to be beyond their scope.

3     18.   "And" and "or" mean "and/or" whenever the context reasonably allows

4 or requires such construction.

## INSTRUCTIONS

6     1.   These Interrogatories require you to provide all information and

7 available to Plaintiff, including all information and documents available to Plaintiff

8 through any associated entity, employee or agent, including counsel.

9     2.   These Interrogatories are deemed to be continuing so as to require the

10 filing of supplemental answers in the event Plaintiff or his representatives (including

11 counsel) learn additional facts not set forth in their answers or discover that

12 information given in their answers is erroneous or incomplete. Such supplemental

13 answers may be served from time to time but not later than thirty (30) days after such

14 further information is discovered or received.

15     3.   Each Interrogatory is to be answered separately and as completely as

16 possible. The fact that investigation is continuing or that discovery is not complete

17 shall not be used as an excuse for failure to answer as fully as possible. The omission

18 of any name, fact or other item of information from the answers shall be deemed a

19 representation that such name, fact or item was not known to Plaintiff, or his counsel

20 or other representatives, at the time of service of the answers.

21     4.   Each Interrogatory shall be construed separately, and no Interrogatory

22 shall be used to construe any other Interrogatory more narrowly than it otherwise

23 would be construed.

24     5.   If you cannot supply precise information, state your best estimate or

25 approximation (including your best approximation of dates by reference to other

26 events when necessary designated as such).

27     6.   To the extent that you contend in your response to these Interrogatories

28 that the information sought is privileged, irrelevant, not required to be produced in

1  discovery and/or otherwise not the proper subject of response by Plaintiff, you must

2  provide as complete an answer as you contend is permissible under the Federal Rules

3  of Civil Procedure.

4        7.     Unless specifically noted otherwise, the relevant time frame of these

5  Interrogatories shall be from January 1, 2002, until the date upon which responses

6  hereto are due, and as may be later supplemented in accordance with the Federal

7  Rules of Civil Procedure.

8  **<u>INTERROGATORIES</u>**

9  **<u>INTERROGATORY NO.: 1</u>**

10       For the T-100 purchase contracts between Gyrodata and AIS described in

11  Count Four of your Complaint:

12       (a)    describe with particularity and give the date of every act or omission that

13  you claim supports your contention that BAE knew of these contracts;

14       (b)    describe with particularity and give the date of every act or omission that

15  you claim supports your contention that BAE intentionally induced AIS to breach

16  these contracts;

17       (c)    describe with particularity and give the date of every act or omission that

18  you claim supports your contention that AIS breached these contracts as a result of

19  the BAE Defendants' intentional interference;

20       (d)    identify each document or communication that you claim supports your

21  contentions as stated in subparts (a) through (c) above; and

22       (e)    identify each person that you claim has information regarding your

23  contentions as stated in subparts (a) through (c) above.

24  **<u>INTERROGATORY NO.:2</u>**

25       For the T-70 contract between Gyrodata and BAE Inertial, now AIS described

26  in Count Five of your Complaint:

27       (a)    describe with particularity and give the date of every act or omission that

28  you claim supports your contention that BAE knew of this contract with AIS;

- 6 -

1       (b)    describe with particularity and give the date of every act or omission that

2   you claim supports your contention that BAE intentionally induced AIS to breach this

3   contract;

4       (c)    describe with particularity and give the date of every act or omission that

5   you claim supports your contention that AIS breached this contract as a result of the

6   BAE's intentional interference;

7       (d)    identify each document or communication that you claim supports your

8   contentions as stated in subparts (a) through (c) above; and

9       (e)    identify each person that you claim has information regarding your

10   contentions as stated in subparts (a) through (c) above.

11   **INTERROGATORY NO.: 3**

12       Describe with particularity, and identify and produce all documents or

13   communications that evidence, refer or relate to, each and every fact that supports

14   your contention that "the cost or procuring [T-70-type gyroscopes] from another

15   supplier" is "estimated at $20,000 to $25,000 per gyroscope" as alleged in paragraph

16   37(a)(ii) of the Complaint.

17   **INTERROGATORY NO.: 4**

18       Describe with particularity, and identify and produce all documents that

19   evidence, refer or relate to, each and every fact that supports your contention or upon

20   which you intend to rely that "Gyrodata will be required to pay another to develop the

21   T-70 gyroscope in light of [Defendants] absolute failure to develop the T-70

22   gyroscope, a loss Gyrodata estimates is at least $2,500,000" as alleged in paragraph

23   37(a)(iii) of the Complaint.

24   **INTERROGATORY NO.: 5**

25       Describe with particularity, and identify and produce all documents that

26   evidence, refer or relate to, each and every fact that supports your contention or upon

27   which you intend to rely that Gyrodata's profits "could easily have been increased

28   three- to four-fold within the pertinent period" and that "Gyrodata would have been

1  able to dominate the [high-inclination] market and lawfully charge a significant

2  additional premium for such jobs" as alleged in paragraph 37(a)(iv) of the Complaint.

3  **INTERROGATORY NO.: 6**

4     Describe with particularity, and identify and produce all documents or

5  communications that evidence, refer or relate to, each and every meeting that

6  occurred "during 2005 and 2006" in which you contend Carol Marinello made

7  misrepresentations as alleged in paragraph 45 of the Complaint.

8  **INTERROGATORY NO.: 7**

9     Describe with particularity, and identify and produce all documents or

10  communications that evidence, refer or relate to, each and every misrepresentation

11  you allege Defendants made regarding the T-70 gyroscope as alleged in paragraph

12  48(a) through 48(h) of the Complaint.

13  **INTERROGATORY NO.: 8**

14     Describe with particularity, and identify and produce all documents or

15  communications that evidence, refer or relate to, each and every example of

16  Gyrodata's reliance upon statements, representations, documents, or communications

17  you allege are fraudulent in Count Three of the Complaint.

18  **INTERROGATORY NO.: 9**

19     Describe with particularity, and identify and produce all facts, documents, or

20  communications that evidence, refer or relate to, all efforts made by Gyrodata to

21  procure, invent, or develop a gyroscope similar in design or function to the T-70 or

22  otherwise to meet Gyrodata's need for a T-70-type gyroscope, including all time,

23  effort, money, or capital expended in this effort.  This interrogatory specifically

24  excludes the time, effort, money, or capital expended on repair, modification, or

25  retrofitting of the T-100 gyroscopes purchased from Defendants.

26  ///

27  ///

28  ///

DEFENDANTS BAE SYSTEMS FIRST INTERROGATORIES  CV08-07897 GHK (FMOx)

**INTERROGATORY NO.: 10**

Describe with particularity, and identify and produce all facts, documents, or communications that evidence, refer or relate to, whether Gyrodata has procured, invented, or developed a gyroscope similar in design or function to the T-70 or otherwise meets Gyrodata's needs for a T-70-type gyroscope.

**INTERROGATORY NO.: 11**

If you claim that Gyrodata has procured, invented, or developed a gyroscope similar in design or function to the T-70, describe with particularity, and identify and produce all facts, documents, or communications that evidence, refer or relate to, the product specifications (as defined in this document) of the sensor, including, but not limited to:

    (a)    motor power consumption (in watts);

    (b)    torquer rate capability (also known as dynamic range) (in degrees/second);

    (c)    activation time (in seconds);

    (d)    g-independent drift (also known as bias) (in degrees/hour);

    (e)    random drift (also known as bias stability) (in degrees/hour 1 sigma);

    (f)    g-sensitive drift (also known as mass unbalance) (in degrees/hour/g);

    (g)    $g^2$-sensitive drift (in degrees/hour/$g^2$);

    (h)    operational life (in hours);

    (i)    operating temperature range (in degrees Celsius);

    (j)    shock capability (in g); and

    (k)    random vibration capability (in g, and provide frequency range).

**INTERROGATORY NO.: 12**

If you do not claim that Gyrodata has procured, invented, or developed a gyroscope similar in design or function to the T-70, describe with particularity, and identify and produce all facts, documents, or communications that evidence, refer or

DEFENDANTS BAE SYSTEMS FIRST INTERROGATORIES  CV08-07897 GHK (FMOx)

1  relate to, the achieved performance characteristics of each and every different T-70-

2  type prototype, including, but not limited to:

3      (a)    motor power consumption (in watts);

4      (b)    torquer rate capability (also known as dynamic range) (in

5  degrees/second);

6      (c)    activation time (in seconds);

7      (d)    g-independent drift (also known as bias) (in degrees/hour);

8      (e)    random drift (also known as bias stability) (in degrees/hour 1 sigma);

9      (f)    g-sensitive drift (also known as mass unbalance) (in degrees/hour/g);

10     (g)    $g^2$-sensitive drift (in degrees/hour/$g^2$);

11     (h)    operational life (in hours);

12     (i)    operating temperature range (in degrees Celsius);

13     (j)    shock capability (in g); and

14     (k)    random vibration capability (in g, and provide frequency range).

15 **INTERROGATORY NO.: 13**

16     Identify any communications Plaintiff and/or any of its representatives or

17 agents, had with any third-parties concerning, relating or regarding the subject matter

18 of the Amended Complaint.  For each communication, identify it and describe in it in

19 detail and with particularity as set forth in the Instructions herein.

20 **INTERROGATORY NO.: 14**

21     State the total amount of money Plaintiff seeks to recover in this lawsuit and

22 the specific manner in which such alleged damages have been calculated, describing

23 with particularity the factual basis for Plaintiff's alleged entitlement to that sum.

24 **INTERROGATORY NO.: 15**

25     Identify all witnesses, whether fact or expert, to be called by plaintiff at trial.

26 ///

27 ///

28 ///

DEFENDANTS BAE SYSTEMS FIRST INTERROGATORIES  CV08-07897 GHK (FMOx)

**INTERROGATORY NO.: 16**

For each expert witness identified in Interrogatory No. 16, provide such disclosure as is required under Fed. R. Civ. P. 26(a)(B).


DATED:  November 12, 2009          BUCHANAN INGERSOLL & ROONEY PC




By:  CYRIL J. DANTCHEV
      MARY SUE HENIFIN
      SANDRA S. MORAN
      RICHARD HAMILTON III

      Attorneys for Defendants BAE SYSTEMS, INC., BAE SYSTEMS CONTROLS INC., and BAE SYSTEMS INFORMATION AND ELECTRONIC SYSTEMS INTEGRATION, INC.,

DEFENDANTS BAE SYSTEMS FIRST INTERROGATORIES  CV08-07897 GHK (FMOx)